**John J. Gitlin, Esq.**
**State Bar No. 07986600**
**Spring Valley Office Commons**
**5339 Spring Valley Road, Suite 150**
**Dallas, Texas 75254**
**Telephone: (972) 385-8450**
**Telecopier: (972) 385-8460**
**Counsel for Debtor**

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| D & D HOSPITALITY LLC | § | CASE NO: 11-43153-BTR-11 |
| | § | |
| Debtor in Possession | § | CHAPTER 11 |

### FIRST AMENDED DISCLOSURE STATMENT
### DATED FEBRUARY 22, 2012

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY,
UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE
OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES
WHATSOEVER.

# TABLE OF CONTENTS

ARTICLE I - INTRODUCTION ................................................................ 3

ARTICLE II - REPRESENTATIONS ....................................................... 10

ARTICLE III - FINANCIAL PICTURE OF THE DEBTOR ..................................... 11

ARTICLE IV - ANALYSIS AND VALUATION OF PROPERTY ........................................ 13

ARTICLE V- SUMMARY OF THE PLAN ....................................................... 14

ARTICLE VI - FEASIBILITY OF PLAN ............................................................ 20

ARTICLE VII - ALTERNATIVES TO DEBTOR'S PLAN ..................................... 21

ARTICLE VIII - RISKS TO CREDITORS UNDER DEBTOR'S PLAN ................................ 21

ARTICLE IX - TAX CONSEQUENCES TO THE DEBTOR ................................. 21

ARTICLE X - PENDING LITIGATION ....................................................... 23

ARTICLE XI - SUMMARY OF SIGNIFICANT

ORDERS ENTERED DURING THE CASE ....................................................... 24

EXHIBITS .............................................................................................

Plan .................................................................................................. 1

Income and Expense Statement ....................................................... 2

Cash-flow Budget........................................................................... 3

Claims Summary and Plan Payment Schedule .................................... ........4

**THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.**

# ARTICLE I

## Identity of the Debtor

**1.01**     Debtor and the Plan Proponent, D & D Hospitality LLC, filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("Code") on September 2, 2011 in the United States Bankruptcy Court for the Northern District of Alabama. Thereafter, on or about October 18, 2011, Debtor's bankruptcy case was transferred to the Bankruptcy Court, Eastern District of Texas, Sherman Division. The Debtor is operating its business as a Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code.

## Purpose of This Disclosure; Source of Information

**1.02**.     Debtor submits this Disclosure pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors and the Members of, Debtor in order to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan.  A copy of the Plan is attached hereto as Exhibit A and incorporated herein by this reference. The Plan sets forth in detail the repayment arrangement between the Reorganized Debtor and its creditors. This Disclosure describes the operations of the Debtor contemplated under the Plan.  Any accounting information contained herein has been provided by the Debtor and has been prepared using the cash method of accounting.

## Explanation of Chapter 11

**1.03**     Chapter 11 is the principal reorganization chapter of the Code.  Pursuant to Chapter 11, a debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the debtor.  After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the debtor.  Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization. This Disclosure is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

## Explanation of the Process of Confirmation

**1.04**     Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court.  Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants.  It generally requires that the value to be distributed to Claimants and Equity Interest Holders may not be less than such parties would receive if the debtor were liquidated under Chapter 7 of the Code.

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

**1.05**      Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan.  Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the debtor vote in favor of the plan in order for it to be confirmed by the Court.  The plan, however, must be accepted by:  (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

**1.06**      The Court may confirm the plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

**1.07**      Confirmation of the plan discharges the debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.  The "Effective Date" of the plan means thirty (30) days after the confirmation date.

## <u>Voting Procedures</u>

**1.08**      <u>Unimpaired Class</u>.  Claimants in Class 1 are not impaired under the Plan.  Such Class, therefore, is deemed to have accepted the Plan.

**1.09**      <u>Impaired Classes</u>.  Classes 2, 3, 4, 5, 6 and 7 Claimants are impaired as defined by Section 1124 of the Code. The Debtor is seeking the acceptance of the Plan by Claimants in Classes 2, 3, 4, 5 and 6. Class 7 Claimants whose interests in the Debtor are being cancelled under the terms of the Plan are deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g) and therefore are not being solicited by the Debtor. Each holder of an Allowed Claim in Classes 2, 3, 4, 5 and 6 may vote on the Plan by completing, dating, and signing the ballot sent to each holder and filing the ballot as set forth below. One ballot will be sent to each Claimant eligible to vote on the Plan. For all Classes, the ballot must be returned to Debtor's counsel, John Gitlin, Esq., by mail at 5339 Spring Valley Road, Dallas, Texas 75254; by email at johngitlin@gmail.com or by facsimile at 972.385.8460.  In order to be counted, ballots must be **RECEIVED** no later than the time and on the date stated on the ballot.

**1.10**      <u>Acceptances</u>.  Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

**THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.**

### Best Interests of Creditors Test

**1.11**    Section 1129(a) (7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  If Section 1111(b) (2) of the Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.  In order for the Plan to be confirmed, the Court must determine that the Plan is in the best interests of the Debtor's creditors.  Accordingly, the proposed plan must provide the Debtor's creditors would receive more than they would receive in a Chapter 7 liquidation. Accordingly, since the Plan proposes to pay all secured creditors in full and the unsecured creditors a substantial dividend, Debtor believes that the creditors are receiving more than they would receive in Chapter 7 liquidation.  Accordingly, the Plan satisfies the requirements of Section 1129(a) (7).

### Cramdown

**1.12**    The Court may confirm the Plan even though less than all of the classes of claims and interests accept it.  The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.  Accordingly, Debtor, as the plan proponent, requests that the Court determine that the Plan does not discriminate unfairly, and is fair and equitable with respect to any objecting creditor. A discussion of the specific requirements for Cramdown of a Plan are set forth below.

### Definition of Impairment

**1.13**    As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

(a)    leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

(b)    notwithstanding any contractual provision or applicable law that entitles the holder or a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

    (i)    cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

(ii)    reinstates the maturity of such claim or interest as it existed before such default;

(iii)    compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

(iv)    does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

### Classification and Treatment of Claims and Interests

1.14    The Plan classifies Claims separately in accordance with § 1122 of the Bankruptcy Code and provides different treatment for different classes of Claims.

1.15    Only holders of Allowed Claims are entitled to receive distributions under the Plan.  Allowed Claims are Claims that are not in dispute, are not contingent, are liquidated in amount, and are not subject to objection or estimation.  Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed Claims  will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim, as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

1.16    In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

### Requirements for Confirmation of the Plan

1.17    At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

The plan complies with the applicable provisions of the Bankruptcy Code.

The proponents of the plan comply with the applicable provisions of the Bankruptcy Code.

The plan has been proposed in good faith and not by any means forbidden by law.

Any payment made or promised by the Debtor, by the plan proponents, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

(A)    The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSEMENT STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor to the Debtor under the plan; and (B) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and   the  proponent  of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

With respect to each impaired class of claims or interests:

(i) each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (ii) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.
With respect to each class of claims or interests:

(i)      such class has accepted the plan; or

(ii)     such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(i)      with respect to a claim of a kind specified in section 507(a) (1) or 507(a) (2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii)     with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii)    with respect to a claim of a kind specified in section 507(a) (7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim

**THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.**

deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

If the debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.
All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan. The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e) (1) (B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Debtor believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Debtor has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith. At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

The Debtor believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that the future operating revenues and capital infusions provided for by the plan will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the business. These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

## **Cramdown**

**1.18**   The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it.  For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the proponents of the

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

    **1.19**   "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims.  As set forth in section 1129(b) (2) of the Bankruptcy Code, those meanings are as follows:

With respect to a class of secured claims, the plan provides:

    (a)  (i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

    (ii)    that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

    (b)    for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

    (c)  the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of unsecured claims, the plan provides:

    (a)  that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

    (b)  the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115 subject to the requirements that a) the value, as of effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b) the value of property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

With respect to a class of interests, the plan provides:

**THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.**

(a)   that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

(b)   that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

  **1.20**  In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. SO LONG AS THE CLASSES OF UNSECURED CREDITORS VOTE FOR THE PLAN THEN THE PLAN WILL NOT VIOLATE THE ABSOLUTE PRIORITY RULE.  The absolute priority rule requires that prior to a junior class of claimants retaining or receiving any property the senior classes of claims must be paid in full or vote to accept the Plan.

  The Debtor believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims.

**ARTICLE II**
**REPRESENTATIONS**

  2.01  This Disclosure is provided pursuant to Section 1125 of the Code to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of reorganization, as amended or modified. The purpose of this Disclosure is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan. The information contained in this Disclosure has been derived from information submitted by the Debtor, unless specifically stated to be from other sources. No representations concerning the Debtor are authorized by the Debtor other than those set forth in this Disclosure. The Debtor recommends that any representation or inducement made to secure your acceptance or rejection of the Plan which is not contained in this Disclosure should not be relied upon by you in reaching your decision on how to vote on the Plan. Any representation or inducement made to you not contained herein should be reported to the attorneys for Debtor who shall deliver such information to the Court for such action as may be appropriate.

  2.02  ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION ("SEC"), THE TEXAS SECURITIES BOARD, OR ANY OTHER RELEVANT GOVERNMENTAL AUTHORITY IN ANY STATE OF THE UNITED STATES.   IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

UPON THE MERITS OF THE PLAN.  ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

2.03    THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.  FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.  THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

2.04    THE DEBTOR BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED.  CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

2.05    DEBTOR DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE III

## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

3.01    D & D Hospitality LLC ("Debtor", "Debtor in Possession", or the "Company") was formed in September, 2006 for the purpose of acquiring and operating a Comfort Suites Hotel located in Gainesville, Texas ("Hotel"). The Debtor is and has been since April, 2007, the owner and operator of the Hotel and continues to operate its business as a Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code. The Hotel being located in Gainesville, Texas is in proximity to the WinStar Casino. Soon after acquiring the business in 2007, the Debtor encountered increased competition due to expansion of the casino, including construction of a 400 room hotel integrated with the casino facility, and the opening of several other hotels in the Gainesville area resulting in a drop in occupancy rates and revenue for the Hotel. Thereafter, commencing in 2008, the hospitality industry in the US and North Texas generally and the Hotel specifically experienced a material downturn in business due to the financial recession.

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

As a result, the Company had to reduce, by agreement the monthly payments to the second lienholder and cease making payments to the third and fourth lien holders while continuing to meet its obligations to the first lien holder, the franchisor, taxing authorities and for the general operating expenses of the Hotel.

On August 16, 2011 North Texas Hotel Group Inc. ("North Texas"), which holds the fourth lien position on the Hotel, served on Debtor a notice of foreclosure. As a result, Debtor filed its Chapter 11 petition in the Northern District of Alabama (Case No. 11-83081-11) to prevent the foreclosure and to allow orderly reorganization of the Debtor under the protection of the Bankruptcy Court.  Thereafter, by agreement of the Debtor and North Texas, the bankruptcy case was transferred in October, 2011 to the Bankruptcy Court, Eastern District of Texas, Sherman Division.

1. Revenue

Room revenue has been trending down since January 2009, and as of July 2009, took a large downward turn due to the drastic downturn in the economy and the shift in travel patterns of many companies compared to the past.  Since mid 2011, the Hotel has evidenced an upturn in gross revenues which by November 30, 2011, reflected a healthy increase over year to date revenues earned in 2010.

2. Future Activities.

The Debtor has identified that the key problems with the hotel are all directly related to the drastic downturn in the economy, and many companies looking for better rates and building of more rooms in the town. The Debtor has started a very aggressive program to get new business and the businesses lost due to the economic downturn. Some companies are again bringing guests from out of town.

### Current Operations

3.02.    An Profit and Loss statement showing actual operation of the Debtor is attached hereto as ***Exhibit "2"*** and incorporated herein by this reference as if set forth in full for all purposes.

### Future Income and Expenses Under the Plan

3.03.     The Debtor's projections of plan payments is set forth on ***Exhibit "3"*** attached hereto.  The Debtor's Claims Summary and Plan Payment Schedule is attached hereto as ***Exhibit "4"***.  Dollars to fund the Plan will come from the Debtor's continued business operations and the New Equity Interest Holders' contributions provided for by the Plan. As reflected in Debtor's 5 Year Cashflow Budget which is attached hereto as Exhibit 3, Debtor has included in its budget reserves for capital improvement of the property. The Hotel is less than five years old and therefore Debtor does not anticipate major capital improvements to the Hotel being required by

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

the franchisor, Choice Hotels International. During the most recent visit by a representative of Choice, the only request for minor improvements such as repainting the parking lot stripes. Nevertheless, it can be anticipated that minor ongoing normal improvements will be necessary for the Hotel and therefore Debtor has included in its budget a reserve which it believes will be sufficient to meet such expenditures.

### Future Management of the Debtor

3.04.    Subject to and upon the occurrence of the Effective Date and as discussed more fully in Debtor's Plan, Debtor has entered into a Management Agreement with North Texas Hotel Group, Inc., ("NTHG") to manage the operations of the Hotel and an Operating Agreement pursuant to which Raj Patel, a New Equity Interest holder, will assume the position of managing Member of the Reorganized Debtor. Mr. Patel shall not receive any compensation for acting as the managing member. Under the terms of the Management Agreement, Debtor shall pay NTHG the sum of three thousand dollars ($3,000.00) per month plus an annual incentive fee equal to five per cent (5%) of the gross revenues generated by the Hotel in the years 2012 and thereafter in excess of the gross revenues generated by the Hotel in the year 2011. The Management Agreement further provides that the incentive and management fees shall be earned but only paid if and when there are sufficient funds available after all operating expenses and Plan payments are made and there is a sufficient reserve for future contingencies. NTHG's principal, Mr. Raj Patel, has owned and managed various hotels in the north Texas area since 1997 and has over 14 years of managerial and operational experience.

### ARTICLE IV
### ANALYSIS AND VALUATION OF PROPERTY

### Real Property

4.01.    Debtor's non monetary assets consist of the Comfort Suites Hotel located in Gainesville, Texas and the personal property contained therein, including furniture, fixtures and equipment.  Debtor estimates the as-is fair market value of the real property and all personal property at approximately $2,600,000.00. The estimated value of the real property, including all personalty was arrived at from an appraisal which was done for the Debtor in the summer of 2011 which stated a value of $2,830,000.00, with adjustments by the Debtor. More specifically the appraisal assigned a total of $540,000.00 to the FF&E based on a per centage of the total valuation of the real property. Debtor believes that the fair market value of the personalty is substantially less considering its age and therefore has adjusted the valuation accordingly and in keeping with how the FF&E are carried on Debtor's books.

### Cash on Hand

4.03    Debtor has approximately $200,000.00, on hand and in its bank accounts as of the date of this Disclosure Statement.

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

## Liquidation Value of Assets

| Property | Value | Secured Debt | Equity |
|---|---|---|---|
| Real and Personal Property[1] | $2,600,000.00 | $4,737,714.00 | $0.00 |

The projected amount of unsecured debt is $2,204,736.88 (2,230,652.)  The Plan proposes to pay  (i) the CDC/SBA 5% of its Allowed Claim, one half of which shall be paid on the effective date; (ii) North Texas Hotel Group, Ltd. 5.00% of its Allowed Claim one half of which shall be paid on the effective date; (iii) First-Citizens Bank & Trust Company 5.00% of its Allowed Claim one half of which shall be paid on the effective date; (v) Parminder Dhaliwal 5.00% of its Allowed Claim one half of which shall be paid on the effective date and (iv) unsecured creditors with Allowed Claims of less than $15,000.00 in full on the effective date. The Debtor has prepared this Liquidation Analysis based on its opinion of the value of the assets. It has not included costs of sale in the event that Debtor were in a Chapter 7 liquidation bankruptcy proceeding which would be approximately 6% marketing commissions, plus Trustee fees plus other administrative fees incurred by the Trustee. Nor does it take into account the impact of attempting to sell the hotel property while in a Chapter 7 bankruptcy proceeding, which proceedings historically depresses the amount a buyer is willing to pay for the real property. Based upon the foregoing, Debtor believes that all creditors will receive under the terms of its Plan, payment equal to or greater than what they would have otherwise received if Debtor were in a Chapter 7 proceeding.

## Funding of the Plan

The major source of funding for the Plan will come from the initial investment of $200,000.00 by Gagan Dhaliwal ($102,000.00 or 51.00%), Gurpreet Dhaliwal ($28,000.00 or 14.00%), and North Texas Hotel Group, Ltd ($70,000.00 or 35.00%), the Debtor's business operations and income, and cash on hand. Concurrently, in the event that any additional sums are required to avoid default under the terms of this Chapter 11 Plan, all New Equity Interest members are committed to provide up to an additional $150,000.00 to be paid *pro rata* by the members based upon their individual equity interests.  If a member does not contribute his *pro rata* share, the remaining members will be obligated to contribute the additional sums, and any defaulting member will lose his or its equity interest proportionate to the amount that the member failed to contribute.

On February 13, 2012, Debtor filed a Motion Pursuant to Rule 3020(a), Bankruptcy Rules requesting that the Court enter an order directing that all funds which are to be used for distribution through the Effective Date of the Plan proposed by any plan proponent, including Debtor, be escrowed with the Debtor in Possession to ensure that the funds will be available for funding the plan. A hearing on the Motion is scheduled for hearing on March 22, 2012.

## ARTICLE V
## SUMMARY OF THE PLAN AND

---

[1] Included in the total value of the hotel.

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

**Class 1** consists of any Allowed Administrative Claims.

**Class 2** consists of any Allowed Secured Tax Claims.

**Class 3** consists of any Allowed Priority Tax Claims.

**Class 4A** consists of the Allowed Secured Claim of US Bank NA.

**Class 4B** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of the North Texas CDC/SBA ("SBA").

**Class 4C** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of First-Citizens Bank & Trust Company.

**Class 4D** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of North Texas Hotel Group Ltd.

**Class 5** consists of any Allowed Unsecured Claims in excess of $15,000.00.

**Class 6** consists of any Allowed Unsecured Claims of $15,000.00 or less, and further includes the Allowed Unsecured Claims, which exceed $15,000.00 if such holder elects to reduce its aggregate Claim to $15,000.00.

**Class 7** consists of any prepetition or pre-Confirmation equity interests of any Interest Holder.

**5.01.**    The Claims and Interests classified in this Article V shall be treated in the manner set forth hereinbelow.

**Class 1 Claims**.    The Class 1 Claims will be paid once Allowed, in full by the Debtor on the latter of the Effective Date and the date such Claim is Allowed by Final Order. These claims are priority claims pursuant to Section 507(a) (1) of the Bankruptcy Code. These claims include claims for Debtor's attorney's fees and U.S. Trustee's fees. U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment.

**Class 2 Claims (Secured Tax Creditor Claims)**.    The Class 2 Claims are secured claims with liens that will follow the collateral securing such claims to the extent that such collateral is surrendered either prior to or as part of this Plan such secured liens and claims shall follow the collateral and shall not be paid by the Debtor as part of this Plan. Debtor asserts that

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

there are no Claims in this Class. To the extent that such Claims are found to exist by a Final Order, such Claims shall be treated as follows:

The Class 2 Allowed Claims that relate to collateral or property being retained by the Debtor as part of the Plan shall be paid if Allowed over five (5) years from the Petition Date with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made to the extent of the tax escrow on hand and then monthly payments on the unpaid balance shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

These claims are secured claims.  These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed.  While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed. In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the debtor.  Such default shall be cured within 15 business days of the date of transmission of such notice of default.  In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court.  The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice.  Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 Claim**.  Debtor asserts that there are no Claims in this Class. To the extent that such Claims are found to exist by a Final Order, such Claims shall be treated as follows:

The Class 3 Claims will be paid if Allowed over three (3) years with interest on such amounts at the rate of 4.25% per annum until paid in full.  The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. These claims are priority claims.  A failure by the reorganized Debtor to make a payment to the priority tax creditors pursuant to the terms of the Plan shall be an Event of Default.  If the reorganized Debtor fails to cure and Event of Default as to such payments within ten (10) days after receipt of written notice of default from the priority tax creditors, then the priority tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the priority tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt. However, due to the size and ongoing nature of the IRS's claim, upon a default under the plan, the administrative collection powers and the rights of the IRS shall be reinstated as they existed prior to the filing of the bankruptcy petition, including, but not limited to, the assessment of taxes, the filing of a notice of Federal (or state) tax lien and the powers of levy, seizure, and as provided under the Internal Revenue Code. As to the IRS:

(A) If the Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability; or fails to make payment of any tax to the Internal Revenue Service within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the United States may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the United States of the right to declare that the successor in interest or Debtor is in default.

(B) If the United States declares the Debtor or the successor in interest to be in default of the Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Debtor or the successor in interest.

(C) If full payment is not made within 14 days of such demand, then the Internal Revenue Service may collect any unpaid liabilities through the administrative collection provisions of the Internal Revenue Code. The IRS shall only be required to send two notices of default, and upon the third event of Default the IRS may proceed to collect on all amounts owed without recourse to the Bankruptcy Court and without further notice to the Debtor. The collection statute expiration date will be extended from the Petition Date until substantial default under the Plan. All payments will be sent to: IRS, 1100 Commerce Street, Mail Code **5024** DAL, Dallas, Texas 75242 attn Leo Carey.

(D) The Internal Revenue Service shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the IRS. The Internal Revenue Service may take such actions as it deems necessary to assess any liability that may be due and owing by the responsible persons of the Debtor to the Internal Revenue Service; but the Internal Revenue Service shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.

The Class 3 Claims are Impaired and the holders of the Class 3 Claims are entitled to vote to accept or reject the Plan.

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

**Class 4 Claim**.

**(a)      The Class 4A Claim will be paid as Allowed as follows:**

The Class **4 A** Claim will be treated as an Allowed Secured Claim of U.S. Bank NA in the amount of $2,576,496.11 and shall be paid in full with interest on such Allowed Amount at Wall Street Journal Prime Rate plus 1.6% per annum which interest rate shall be adjusted quarterly. The Allowed Amount plus interest shall be amortized over twenty-five years from April 6, 2007 with a final payment due on April 6, 2032. The payments shall be made in equal monthly installments of principal and interest commencing on the tenth day of the month following the Effective Date and shall continue on the tenth day of each month thereafter until paid in full.

The Class **4 A** Claimant shall retain all of its liens and security interests as originally provided in the loan documents between Debtor and Claimant until the Allowed Amount is paid in full.

The Class **4 A** Claimant is Impaired and the holder of the Class **4** Claim is entitled to vote to accept or reject the Plan.

**(B)   The Class 4(B) Claim will be paid as Allowed as follows:**

Absent a determination that some portion of the Class 4B Claim of the North Texas CDC/Small Business Administration ("SBA") is a Secured Claim pursuant to § 506 of the Bankruptcy Code, the entire amount of such Class 4B Claim will be treated as an Unsecured Claim, and, as such, shall be treated as a Class 5 Claim.  Accordingly, the default position, which shall apply under this Plan absent such determination, is that the value of all available collateral is attributable solely to the senior Class 4A Claim.  If and to the extent the Bankruptcy Court determines at or before the conclusion of the Confirmation Hearing, at the request of the Class 4B Claimant, that any portion of the Class 4B claim is secured pursuant to § 506 of the Bankruptcy Code, then such secured portion only shall receive treatment as an Allowed Class 4B Secured Claim on repayment terms identical to the payment terms applicable to Class 4A. Otherwise, in the absence of any such determination or in the event of a determination that only a portion of such Claim is secured, the Class 4B claim shall be treated as an Allowed Class 5 Unsecured Claim in the amount of $1,591,923.20 (or reduced dollar for dollar by any determination that any portion of such Claim is a Secured Claim).

The holder of any Class 4B Allowed Secured Claim is Impaired, and the holder is entitled to vote to accept or reject the Plan in Class 4B.  The Unsecured balance of such Claim shall vote in Class 5 to the extent Allowed.

**(C) The Class 4(C) Claim will be paid as Allowed as follows:**

Absent a determination that some portion of the Class 4C Claim of First-Citizens Bank & Trust Company is a Secured Claim pursuant to § 506 of the Bankruptcy Code, the entire amount of such Class 4C Claim will be treated as an Unsecured Claim.  Accordingly, the default

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

position, which shall apply under this Plan absent such determination, is that the value of all available collateral is attributable solely to the senior Class 4A Claim.  If and to the extent the Bankruptcy Court determines at or before the conclusion of the Confirmation Hearing, at the request of the Class 4C Claimant, that any portion of the Class 4C claim is secured pursuant to § 506 of the Bankruptcy Code, then such secured portion only shall receive treatment as an Allowed Class 4C Secured Claim on repayment terms identical to the payment terms applicable to Class 4A.  Otherwise, in the absence of any such determination or in the event of a determination that only a portion of such Claim is secured, the Class 4C Claim shall be treated as an Allowed Class 5 Unsecured Claim in the amount of $255,976.52 (or reduced dollar for dollar by any determination that any portion of such Claim is a Secured Claim),

The holder of any Class 4C Allowed Secured Claim is Impaired, and the holder is entitled to vote to accept or reject the Plan in Class 4C.  The Unsecured balance of such Claim shall vote in Class 5 to the extent Allowed.

### (D) The Class 4(D) Claim will be paid as Allowed as follows:

Absent a determination that some portion of the Class 4D Claim of North Texas Hotel Group, Ltd. is a Secured Claim pursuant to § 506 of the Bankruptcy Code, the entire amount of such Class 4D Claim will be treated as an Unsecured Claim.  Accordingly, the default position, which shall apply under this Plan absent such determination, is that the value of all available collateral is attributable solely to the senior Class 4A Claim.

The alternate treatments for the Class 4D Claim shall be either (x) or (y) below, with (x) applying unless the holder of the Class 4D Claim, in its sole election, opts for (y):

(x)  If and to the extent the Bankruptcy Court determines at or before the conclusion of the Confirmation Hearing, at the request of the Class 4D Claimant, that any portion of the Class 4D claim is secured pursuant to § 506 of the Bankruptcy Code, then such secured portion only shall receive treatment as an Allowed Class 4D Secured Claim on repayment terms identical to the payment terms applicable to Class 4A.  Otherwise, in the absence of any such determination or in the event of a determination that only a portion of such Claim is secured, the Class 4D claim shall be treated as an Allowed Class 5 Unsecured Claim in the amount of $313,197.73 (or reduced dollar for dollar by any determination that any portion of such Claim is a Secured Claim).  In such case, the holder of any Class 4D Allowed Secured Claim will be Impaired and entitled to vote to accept or reject the Plan in Class 4D, with the Unsecured balance of such Claim voting in Class 5 to the extent Allowed.

- or -

(y)  In exchange for its entire Class 4D Claim, whether Secured or Unsecured, the holder of the Class 4D Claim may, instead of (x) above, choose to receive and accept on account of such claim and the contribution of cash and other capital as may be required of the Class 4D Claimant set forth in Section 6.02, an undiluted thirty five percent (35%) of the New Equity Interests in the Reorganized Debtor.

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

The Class **4(D)** Claimant is Impaired and the holder of the Class **4(D)** Claim is entitled to vote to accept or reject the Plan.

**Class 5 Claim**.  Class 5 consists of all Claimants holding an Allowed Unsecured Claim which is in excess of $15,000.00. Such Claims shall be paid as follows:

Each Claimant shall be paid five per cent (5%) of such Allowed Amount.  Debtor shall pay one-half (1/2) of the Allowed Amount on the Effective Date and shall pay the balance of the Claim in 60 equal monthly installments the first such payment due and payable on the 10th day of the month following the Effective Date and continuing on the 10th day of each month thereafter until paid in full.

The Class 5 Claims are Impaired and each holder of a Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claim.**  The Class 6 Claim will be paid as Allowed as follows:

The Class 6 Claims consist of (x) Claimants holding Claims which, in the aggregate, equal the sum of $15,000.00 or less and (y) Claimants holding a claim or multiple claims totaling in excess of $15,000 and electing to reduce all such claims to a single claim of $15,000. To the extent that such Class 6 Claims become Allowed Claims, such Claimants shall be paid the full amount of their Allowed Amount, but without any interest, on the Effective Date.

The Class 6 Claims are Impaired and the holder of the Class 6 Claims are entitled to vote to accept or reject the Plan.

**Class 7 Claims.**  The Class 7 Claims will be treated as follows:

On the Effective Date, all existing equity interests in the Debtor ("Old Equity Interests") shall be cancelled.  Holders of Old Equity Interests not listed in Section 6.02 below are not invited to and shall not participate in the acquisition of New Equity Interests and accordingly shall not be required on account of New Equity Interests to contribute new cash or capital to the Reorganized Debtor.  However, holders of Old Equity Interests are not thereby relieved of any other obligations they may have under applicable Bankruptcy law or non-bankruptcy law either to the Debtor or its Creditors.

The Class 7 Claimants are totally impaired under the Plan and, pursuant to § 1126(g) of the Code, are deemed to have rejected the Plan and therefore are not entitled to vote to accept or reject the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01     Implementation of Plan**.  This Plan will be implemented, pursuant to §1123(a)(5) of the Code, by the commencement of payments as called for above.

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

**6.02    <u>Issuance of New Equity Interests</u>.**    The new equity interests ("New Equity Interests") in the Debtor shall be purchased and acquired by the following persons or entities on the Effective Date as follows:

**THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.**

| New Members | Cash Contribution Required at the Effective Date | Continuing Capital Contribution per the Plan up to $150,000.00 | Undiluted New Equity Membership Interest |
|---|---|---|---|
| Gurpreet Dhaliwal | $28,000.00 | $21,000.00 | 14% |
| Gagandeep Dhaliwal | $102,000.00 | $76,500.00 | 51% |
| North Texas Hotel Group Ltd. | $70,000.00 | $52,500.00 | 35%% |
| Total | $200,000.00 | $150,000.00 | 100% |

The initial $200,000.00 capital contribution payments shall be tendered to and deposited into the Debtor's counsel's trust account prior to the Confirmation Date.  If the Plan is not confirmed, the $200,000.00 will be returned to those contributing entities.

If a proposed holder of New Equity Interests does not contribute his or its *pro rata* share of the above initial or continuing capital cash contribution in the amount set forth above, such person or entity shall not become a holder of New Equity Interests or a member of the Reorganized Debtor but, instead, the remaining, resulting members will be obligated to contribute the additional sums, and any defaulting member will lose his or its opportunity to acquire such New Equity Interests.

To the extent that a remaining member contributes any additional sums, then in that event the per centage of such remaining member's equity interest in the Reorganized Debtor shall be increased in an amount equal to the per centage that the additional sums contributed to the cash capital contributions is to the total cash contribution required of the New Equity Interests as set forth in this Section 6.02.

None of the purchasing entities shall, by virtue of becoming a holder of the New Equity Interest on the Effective Date, be deemed to have assumed or otherwise become liable for any obligation of the Debtor or the Reorganized Debtor whether under the terms of this Plan or otherwise except for the initial contribution and subsequent capital requirements stated above except as may be expressly agreed to by them in writing from time to time, including, without limiting the foregoing, any state, local or federal tax claims arising before or as a result of implementation of the Plan on the Effective Date, but provided that any tax losses or gains attributable to the holders of the Old Equity Interests prior to or as a result of implementation of the Plan shall continue to be allocated to the holders of the Old Equity Interests notwithstanding the cancellation of those Interests as provided in the Plan.

From and after the Effective Date, the company agreement, articles, and bylaws, as applicable, of the Reorganized Debtor shall be amended (w) to comply with the Bankruptcy Code requirements, (x) to provide for the admission of the holders of New Equity Interests and for the exclusion from membership of holders of Old Equity Interests who do not qualify as

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

holders of New Equity Interests, (y) to provide that no New Equity Interest may be held by, transferred to, or be the subject of any voluntary or involuntary transfer to any other person or entity, whether legally or beneficially, absent consent of all holders of New Equity Interests and, (z) to provide that, upon the death, incapacity, or incarceration of any permitted holder of New Equity Interest or upon such holder becoming the subject or object of a receivership proceeding, charging order, bankruptcy case, guardianship, or similar legal proceeding (with each of the foregoing constituting an "event of incapacity"), the voting rights associated with such holder's interests (together with any rights of such holder to serve as managing member) shall be suspended and the other permitted holders of New Equity Interests not the subject of such event of incapacity shall thereupon exercise one hundred percent (100%) of the voting rights of the ownership in the Reorganized Debtor and, if the holder subject to the event of incapacity is also managing member of the Reorganized Debtor, shall select a new managing member unless and until such holder of the New Equity Interest is relieved of his event of incapacity or such other holders consent to a transfer of such New Equity Interests to a new, permitted holder.  On the Effective Date, each holder of New Equity Interests shall additionally enter into an intra-owner buy/sell agreement providing for the foregoing and other typical buy/sell terms.

     If North Texas Hotel Group, Ltd. exercises the option pursuant to its Class 4D treatment to receive an undiluted thirty-five percent (35%) interest in the New Equity Interests of the Reorganized Debtor and contributes the cash contributions set forth in this Section 6.02, then, in such event, North Texas Hotel Group, Ltd. ("NTH") (or its designee) shall, subject to NTH having made all cash contributions set forth in this Section 6.02 when due, become the managing member of the Reorganized Debtor on the Effective Date and Raj Patel shall become the Manager, and the company agreement, articles, and bylaws, as applicable, shall provide that such managing member and Manager may not thereafter be removed from such office absent a vote of two-thirds (2/3rds) of the New Equity Interests, except upon the material fraud, material malfeasance, gross mismanagement of such managing member or Manager or the failure of NTH to make the capital contributions as required by this Section 6.02. The Manager shall not receive any compensation for acting as the managing member. In addition to the foregoing, the Reorganized Debtor has entered into a Management Agreement with NTH or its designee to operate the Hotel, subject to and contingent upon the occurrence of the Effective Date and the requirements of this Section 6.02.  Under the terms of the Management Agreement, the Reorganized Debtor shall pay the management entity the sum of three thousand dollars ($3,000.00) per month plus an annual incentive fee equal to five per cent (5%) of the gross revenues generated by the Hotel in the years 2012 and thereafter in excess of the gross revenues generated by the Hotel in the year 2011. The Management Agreement further provides that the incentive fee shall be earned but only paid if and when there are sufficient funds available after all operating expenses and Plan payments are made and there is a sufficient reserve for future contingencies.  NTH's principal, Mr. Raj Patel, has owned and managed various hotels in the north Texas area since 1997 and has over 14 years of managerial and operational experience.

## ARTICLE VII
## FEASIBILITY OF PLAN

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

7.01    Debtor asserts that its plan is feasible based on **Exhibits 2 and 3**.    More specifically, as reflected in Exhibit 2, for the year 2011 through November 30th, the Hotel operations has generated gross revenues year to date of $1, 398, 884.53 which after meeting operational costs has netted Debtor average monthly net revenues of $17,138.55, which has been sufficient to meet the monthly mortgage payments to US Bank NA, the first lien holder. In addition, the capital infusion of $200,000.00 which Debtor shall receive from the entities acquiring the new equity interest in the Reorganized Debtor shall be more than sufficient to effectuate payment to those creditors entitled to payment on the Effective Date of the Plan. Concurrently, the new equity holders' commitment to contribute up to an additional $150,000.00 shall provide the necessary cushion for any possible shortfall which might reasonably occur from future decrease in operating revenues.

### Procedure for Filing Proofs of Claims and Proofs of Interests

7.02.    All proofs of claims and proofs of interests must be filed by those Claimants and Equity Interest Holder who have not filed such instruments on or before the Bar Date fixed by the Court.

7.03.    If Claimants have already filed a proof of claim with the Court or are listed in the Debtor's Schedules as holding non-contingent, liquidated and undisputed claims, a proof of claim need not be filed.  The schedules and amendments thereto are on file with the Court and are open for inspection during regular Court hours.  If the equity security interest of an Equity Interest Holder is properly reflected in the Debtor, a proof of interest need not be filed.

### ARTICLE VIII
### ALTERNATIVES TO DEBTOR'S PLAN

8.01.    If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code.  Since the Debtor's assets are heavily mortgaged, Debtor projects that there would be little or no distribution to unsecured creditors in Chapter 7 (See discussion in Article IV, "Liquidation Value of Assets").

### ARTICLE IX
### RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

9.01.    Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan.  The Plan contemplates that the Debtor's business will generate revenue sufficient to pay the obligations accruing from its operations.  The Debtor does not "guarantee" that the expenses will equal those in the projections; however, the Debtor believes that the projections are reasonable.

**THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.**

# ARTICLE X
## TAX CONSEQUENCES TO THE DEBTOR

TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING (WITHIN THE MEANING OF U.S. TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

A. Introduction

The following discussion summarizes certain material U.S. federal income tax consequences of the Plan to the Debtor and holders of Claims and Interests. The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtor's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes,

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

**On February 13, 2009, the House of Representatives and the Senate passed H.R.1, the American Recovery and Reinvestment Act of 2009 (the Recovery Act), a stimulus bill that includes tax breaks for businesses and individuals. The President signed the Recovery Act on February 17, 2009.  The following discussion does not address any aspects of the Recovery Act, some of which may be relevant to a particular holder of a Claim or an Interest**.

**THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST.   EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S.   TAX CONSEQUENCES OF THE PLAN.**

B. Certain Definitions
　　　　Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

　　　　"***COD***" shall mean cancellation of indebtedness income.
　　　　"***NOL***" shall mean net operating loss.
C. Certain Material Federal Income Tax Consequences to the Debtor

　　　　Cancellation of a Debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a Debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that the Debtor is insolvent, or if the Debtor is in bankruptcy, as is the case here, the Tax Code permits the Debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a Debtor under its jurisdiction in a title 11 case, as is sought herein.

　　　　The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the Debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the year of discharge and capital loss carryovers from prior years; basis of the Debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the Debtor's tax year in which the COD occurred, so they are available to the Debtor in determining the amount of its income, loss and tax liability for the year of discharge.

THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.

As a result of the implementation of the Plan, the Debtors will have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, the resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation. Although the Plan allows for an ownership change it is doubtful that one will occur and as such any owner of the Debtor should consult his own tax adviser concerning the effect of the Plan.

The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest. All holders of Allowed Claims are urged to consult their tax advisors. A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

D. Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax

**THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSURE STATEMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.**

advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances.

   HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S. TAX CONSEQUENCES OF THE PLAN.

## ARTICLE X
## PENDING LITIGATION

   10.01.   As of the date of the filing of this Disclosure there are no significant matters pending in Debtor's bankruptcy proceedings.

## ARTICLE XI
## SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

   11.01.   As of the date of the filing of this Disclosure the following significant orders have been entered in this case:   Order to Use Cash Collateral, Order on Debtor's Application to Employ Counsel, and Order on Debtor's Application to Employ Accountant.

Dated: February 22, 2012

                              Respectfully submitted,

                              By:   //s// Gagan Dhaliwal
                                    **Gagan Dhaliwal,**
                                    **Managing Member of Debtor**
                                    **D & D Hospitality LLC**


                                    /s/ John Gitlin
                              **John J. Gitlin, Esq.**
                              **State Bar No. 07986600**
                              **Spring Valley Office Commons**
                              **5339 Spring Valley Road, Suite 150**
                              **Dallas, Texas 75254**
                              **Telephone: (972) 385-8450**
                              **Telecopier: (972) 385-8460**
                              **Counsel for Debtor**

**THIS DISCLOSRE STATEMENT HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT; ACCORDINGLY, UNLESS AND UNTIL AUTORIZED BY THE BANKRUPTCY COURT TO DO SO, NO PARTY SHOULD SOLICIT ACCEPTANCE OR REJECTION OF THE PLAN OR USE THIS DISCLOSUREMENT FOR ANY SOLICITAION PURPOSES WHATSOEVER.**