THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

Jeff Carruth
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(817) 795-5046 – Telephone
(866) 666-5322 – Facsimile
jcarruth@wkpz.com

**ATTORNEYS FOR BAWA DHILLON**


## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| D & D HOSPITALITY, LLC, | § | CASE NO: 11-43153-BTR-11 |
| | § | |
| Debtor in Possession | § | CHAPTER 11 |


## DISCLOSURE STATEMENT IN SUPPORT OF
## COMPETING PLAN OF BAWA DHILLON, DATED: FEBRUARY 22, 2012

THE DISCLOSURE STATEMENT HAS BEEN PREPARED BY BAWA DHILLON (THE "PROPONENT") AND DESCRIBES THE TERMS AND PROVISIONS OF, AND SETS COLLECTIVELY FORTH CERTAIN MATERIAL CONSIDERATIONS IN CONNECTION WITH, THE PROPONENT'S PROPOSED PLAN OF REORGANIZATION, AS MAY BE AMENDED, (THE "PLAN").

ANY CAPITALIZED TERM USED IN THIS DISCLOSURE STATEMENT THAT IS NOT DEFINED HEREIN HAS THE MEANING ASCRIBED TO THAT TERM IN THE PLAN.  THE PROPONENT URGES YOU TO ACCEPT THE PLAN BY SIGNING AND RETURNING THE BALLOT MAILED TO YOU ALONG WITH THIS DISCLOSURE STATEMENT.

IN THE EVENT THAT THE PLAN IS NOT CONFIRMED, THE DEBTOR LIKELY WILL BE FORCED TO LIQUIDATE ITS ASSETS UNDER CHAPTER 7 OF THE BANKRUPTCY CODE. IN A CHAPTER 7 LIQUIDATION, THE PROPONENTS BELIEVE THAT UNSECURED CREDITORS WOULD RECEIVE NO DISTRIBUTIONS OR ELSE SUBSTANTIALLY LESS THAN IS CONTEMPLATED BY THE PLAN.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

# ARTICLE I

## Identity of the Debtor

1.01.    D & D Hospitality LLC (the "Debtor"), filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. Section 101, et seq. ("Code") on September 2, 2011 in the United States Bankruptcy Court for the Northern District of Alabama. Thereafter, on or about October 18, 2011, Debtor's bankruptcy case was transferred to the Bankruptcy Court, Eastern District of Texas, Sherman Division. The Debtor is operating its business as a Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code.

## Purpose of This Disclosure; Source of Information

1.02.    Bawa Dhillon, a shareholder and party-in-interest ("Dhillon" or the "Proponent") submits this Disclosure pursuant to Section 1125 of the Code to all known Claimants of Debtor for the purpose of disclosing that information which the Court has determined is material, important, and necessary for Creditors and of the other parties in interest of the Debtor to arrive at an intelligent, reasonably informed decision in exercising the right to vote for acceptance or rejection of the Debtor's Plan.   A copy of the Proponent's Plan is attached hereto as **Exhibit 1** and incorporated herein by this reference.  The Plan sets forth in detail the repayment arrangement between the Reorganized Debtor and its creditors.  This Disclosure describes the operations of the Reorganized Debtor contemplated under the Plan.  Any accounting information contained herein has been provided by the Debtor and, according to the Debtor, has been prepared using the cash method of accounting.

1.03.    Bawa Dhillon, the Proponent, currently is an Equity Interest Holder of the Debtor. The Proponent files this Disclosure Statement and the competing Plan by through his authorized agent Jagmohan Dhillon.

1.04.    As this Disclosure Statement and Plan are a competing plan with the plan proposed by the Debtor, the Proponent's Plan, and thus this Disclosure Statement, may be amended from time to time to improve the treatment proposed for Creditors under the Plan.

## Explanation of Chapter 11

1.05.    Chapter 11 is the principal reorganization chapter of the Code.  Pursuant to Chapter 11, a Debtor is authorized to reorganize its business for its own benefit and that of its creditors and equity interest holders.  Formulation of a plan of reorganization is the principal purpose of a Chapter 11 reorganization case.  A plan of reorganization sets forth the means for satisfying claims against and interests in the Debtor.  After a plan of reorganization has been filed, it must be accepted by holders of claims against, or interests in, the Debtor. Section 1125 of the Code requires full disclosure before solicitation of acceptances of a plan of reorganization.  This Disclosure is presented to Claimants to satisfy the requirements of Section 1125 of the Code.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

## Explanation of the Process of Confirmation

1.06.    Even if all Classes of Claims accept the plan, its confirmation may be refused by the Court.  Section 1129 of the Code sets forth the requirements for confirmation and, among other things, requires that a plan of reorganization be in the best interests of Claimants and that the value to be distributed to Claimants and Equity Interest Holders may not be less than such parties would receive if the Debtor were liquidated under Chapter 7 of the Code.

1.07.    Acceptance of the plan by the Creditors and Equity Interest Holders is important. In order for the plan to be accepted by each class of claims, the creditors that hold at least two thirds (2/3) in amount and more than one-half (1/2) in number of the allowed claims actually voting on the plan in such class must vote for the plan and the equity interest holders that hold at least two-thirds (2/3) in amount of the allowed interests actually voting on the plan in such class must vote for the plan. Chapter 11 of the Code does not require that each holder of a claim against, or interest in, the Debtor vote in favor of the plan in order for it to be confirmed by the Court. The plan, however, must be accepted by: (i) at least the holder of one (1) class of claims by a majority in number and two-thirds (2/3) in amount of those claims of such class actually voting; or (ii) at least the holders of one (1) class of allowed interests by two-thirds (2/3) in amount of the allowed interests of such class actually voting.

1.08.    The Court may confirm the plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code.

1.09.    Confirmation of the plan discharges the Debtor from all of its pre-confirmation debts and liabilities except as expressly provided for in the plan and Section 1141(d) of the Code. Confirmation makes the plan binding upon the Debtor and all claimants, equity interest holders and other parties-in-interest, regardless of whether or not they have accepted the plan.  The "Effective Date" of the plan means thirty (30) days after the confirmation date.

## Voting Procedures

1.10.    **Unimpaired Class.**  Claimants in Class 1 are not impaired under the Plan.  Such Class, therefore, is deemed to have accepted the Plan.

1.11.    **Impaired Classes.**  Classes 2, 4, 5, 6 and 7 Claimants are impaired as defined by Section 1124 of the Code.  The Proponent is seeking the acceptance of the Plan by Claimants in Classes 2, 4, 5, and 6.  Class 7 Claimants whose interests in the Debtor are being cancelled under the terms of the Plan are deemed to have rejected the Plan pursuant to 11 U.S.C. § 1126(g) and therefore are not being solicited by the Proponent.  Each holder of an Allowed Claim in Classes 2, 4, 5, and 6 may vote on the Plan by completing, dating, and signing the ballot sent to each holder and filing the ballot as set forth below.  One ballot will be sent to each Claimant eligible to vote on the Plan. For all Classes, the ballot must be returned to Proponent's counsel, Jeff Carruth by mail at 3030 Matlock Rd., Suite 201, Arlington, Texas 76015; by email at jcarruth@wkpz.com or by facsimile at 866-666-5322.  In order to be counted, ballots must be RECEIVED no later than the time and on the date stated on the ballot.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

1.12. **Acceptances.** Ballots that are signed and returned but fail to indicate either an acceptance or rejection will not be counted.

## Best Interests of Creditors Test

1.13. Section 1129(a)(7) of the Code requires that each impaired class of claims or interests accept the Plan or receive or retain under the Plan on account of such claim or interest, property of a value as of the Effective Date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code. If Section 1111(b) (2) of the Code applies to the claims of such class, each holder of a claim of such class will receive or retain under the Plan, on account of such claim, property of a value, as of the Effective Date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims. In order for the Plan to be confirmed, the Court must determine that the Plan is in the best interests of the Debtor's creditors. Accordingly, the proposed plan must provide the Debtor's creditors would receive more than they would receive in a Chapter 7 liquidation. Accordingly, since the Plan proposes to pay the holders of Allowed Secured Claims in full and the unsecured creditors a substantial dividend, Debtor believes that the creditors are receiving more than they would receive in Chapter 7 liquidation. Accordingly, the Plan satisfies the requirements of Section 1129(a)(7).

## Cramdown

1.14. The Court may confirm the Plan even though less than all of the classes of claims and interests accept it. The requirements for confirmation of a plan over the objection of one or more classes of claims or interests are set forth in Section 1129(b) of the Code. Accordingly, the Proponent requests that the Court determine that the Plan does not discriminate unfairly, and is fair and equitable with respect to any objecting creditor. A discussion of the specific requirements for Cramdown of a Plan are set forth below.

## Definition of Impairment

1.15. As set forth in section 1124 of the Bankruptcy Code, a class of claims or equity interests is impaired under a plan of reorganization unless, with respect to each claim or equity interest of such class, the plan:

a) leaves unaltered the legal, equitable, and contractual rights of the holder of such claim or equity interest; or

b) notwithstanding any contractual provision or applicable law that entitles the holder or a claim or equity interest to demand or receive accelerated payment of such claim or equity interest after the occurrence of a default:

(i) cures any such default that occurred before or after the commencement of the case under the Bankruptcy Code, other than a default of a kind specified in section 365(b)(2) of the Bankruptcy Code;

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

(ii)     reinstates the maturity of such claim or interest as it existed before such default;

(iii)     compensates the holder of such claim or interest for any damages incurred as a result of any reasonable reliance on such contractual provision or such applicable law; and

(iv)     does not otherwise alter the legal, equitable or contractual rights to which such claim or interest entitles the holder of such claim or interest.

## Classification and Treatment of Claims and Interests

1.16.   The Plan classifies Claims separately in accordance with § 1122 of the Bankruptcy Code and provides different treatment for different classes of Claims.

1.17.   Only holders of Allowed Claims are entitled to receive distributions under the Plan. Allowed Claims are Claims that are not in dispute, are not contingent, are liquidated in amount, and are not subject to objection or estimation. Initial distributions or other transfers of Cash or other consideration specified in the Plan otherwise available to the holders of Allowed Claims will be made on the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim, as otherwise provided in the Plan, or as may be ordered by the Bankruptcy Court.

1.18.   In accordance with the Plan, unless otherwise provided in the Plan or the Confirmation Order, the treatment of any Claim under the Plan will be in full satisfaction, settlement, release, and discharge of and in exchange for each and every Claim.

## Requirements for Confirmation of the Plan

1.19.   At the confirmation hearing, the Bankruptcy Court must determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in section 1129 of the Bankruptcy Code, these requirements are as follows:

The plan complies with the applicable provisions of the Bankruptcy Code.

The Proponent of the plan complies with the applicable provisions of the Bankruptcy Code.

The plan has been proposed in good faith and not by any means forbidden by law.

Any payment made or promised by the Debtor, by the plan Debtors, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in, or in connection with, the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of the Bankruptcy Court as reasonable.

(A)     The Proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the Debtor, an affiliate of the Debtor participating in a joint plan with the Debtor, or a successor

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

to the Debtor under the plan; and (B) the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and the Proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized Debtor, and the nature of any compensation for such insider.

Any governmental regulatory commission with jurisdiction, after confirmation of the plan, over the rates of the Debtor has approved any rate change provided for in the plan, or such rate change is expressly conditioned on such approval.

With respect to each impaired class of claims or interests:

(i)  each holder of a claim or interest of such class has (A) accepted the plan or (B) will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the Debtor were liquidated on such date under chapter 7 of the Bankruptcy Code on such date; or (ii) if section 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the plan on account of such claim property of a value, as of the effective date of the plan, that is not less than the value of such holder's interest in the estate's interest in the property that secures such claims.

With respect to each class of claims or interests:

(i)  such class has accepted the plan; or

(ii)  such class is not impaired under the plan.

Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the plan provides that:

(i)  with respect to a claim of a kind specified in section 507(a) (1) or 507(a) (2) of the Bankruptcy Code, on the effective date of the plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

(ii)  with respect to a class of claims of a kind specified in section 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive: (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim; and

(iii)  with respect to a claim of a kind specified in section 507(a) (7) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the plan, equal to the allowed amount of such claim.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

If a class of claims is impaired under the plan, at least one class of claims that is impaired has accepted the plan, determined without including any acceptance of the plan by any insider holding a claim of such class.

If the Debtor is required by a judicial or administrative order, or by statute, to pay a domestic support obligation, the Debtor has paid all amounts payable under such order or such statute for such obligation that first become payable after the date of the filing of the petition.

Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the plan, unless such liquidation or reorganization is proposed in the plan.

All fees payable under 28 U.S.C. § 1930, as determined by the Bankruptcy Court at the hearing on confirmation of the plan, have been paid or the plan provides for the payments of all such fees on the effective date of the plan. The plan provides for the continuation after its effective date of payment of all retiree benefits, as that term is defined in section 1114 of the Bankruptcy Code, at the level established pursuant to subsection (e) (1) (B) or (g) of section 1114, at any time prior to confirmation of the plan, for the duration of the period the Debtor has obligated itself to provide such benefits.

The Proponent believes that the Plan satisfies all the statutory requirements of chapter 11 of the Bankruptcy Code, that the Proponent has complied with or will have complied with all the requirements of chapter 11, and that the Plan is proposed in good faith. At the Confirmation Hearing, the Bankruptcy Court will determine whether holders of Allowed Claims or Allowed Equity Interests would receive greater distributions under the Plan than they would receive in a liquidation under chapter 7.

The Proponent believes that the feasibility requirement for confirmation of the Plan is satisfied by the fact that the future operating revenues and capital infusions provided for by the plan will be sufficient to satisfy the obligations under the Plan in addition to supporting sustainable growth of the business.  These facts and others demonstrating the confirmability of the Plan will be shown at the Confirmation Hearing.

## <u>Cramdown</u>

1.20.   The bankruptcy court may confirm a plan of reorganization even though fewer than all the classes of impaired claims and interests accept it.  For a plan of reorganization to be confirmed despite its rejection by a class of impaired claims or interests, the Proponent of the plan must show, among other things, that the plan does not "discriminate unfairly" and that the plan is "fair and equitable" with respect to each impaired class of claims or interests that has not accepted the plan.

1.21.   "Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims.  As set forth in section 1129(b) (2) of the Bankruptcy Code, those meanings are as follows:

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

With respect to a class of secured claims, the plan provides:

a)      (i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Debtor or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii)      that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;

b)      for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

c)      the realization by such holders of the "indubitable equivalent" of such claims.

With respect to a class of unsecured claims, the plan provides:

a)      that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim; or

b)      the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the plan on account of such junior claim or interest any property, except that in a case in which the Debtor is an individual, the Debtor may retain property included in the estate under section 1115 subject to the requirements that a) the value, as of effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or (b) the value of property to be distributed under the plan is not less than the projected disposable income of the Debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the plan, or during the period for which the plan provides payments, whichever is longer.

With respect to a class of interests, the plan provides:

a)      that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled or the value of such interest; or

b)      that the holder of any interest that is junior to the interests of such class will not receive or retain under the plan on account of such junior interest any property.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

1.22.   In the event that one or more classes of impaired Claims reject the Plan, the Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. SO LONG AS THE CLASS(ES) OF UNSECURED CREDITORS VOTES FOR THE PLAN THEN THE PLAN WILL NOT VIOLATE THE ABSOLUTE PRIORITY RULE. The absolute priority rule requires that prior to a junior class of claimants retaining or receiving any property the senior classes of claims must be paid in full or vote to accept the Plan.

The Proponent believes the Plan does not discriminate unfairly against, and is fair and equitable with respect to, each impaired class of Claims.

# ARTICLE II
## REPRESENTATIONS

2.01.   This Disclosure is provided pursuant to Section 1125 of the Code to all of the Debtor's known Creditors and other parties in interest in connection with the solicitation of acceptance of its Plan of reorganization, as amended or modified.   The purpose of this Disclosure is to provide such information as will enable a hypothetical, reasonable investor, typical of the holders of Claims, to make an informed judgment in exercising its rights either to accept or reject the Plan.   The information contained in this Disclosure has been derived from information submitted by the Debtor, unless specifically stated to be from other sources. No representations concerning the Debtor are authorized by the Debtor other than those set forth in this Disclosure. The Debtor recommends that any representation or inducement made to secure your acceptance or rejection of the Plan which is not contained in this Disclosure should not be relied upon by you in reaching your decision on how to vote on the Plan.   Any representation or inducement made to you not contained herein should be reported to the attorneys for Debtor who shall deliver such information to the Court for such action as may be appropriate.

2.02.   ANY BENEFITS OFFERED TO THE CREDITORS ACCORDING TO THE PLAN WHICH MAY CONSTITUTE "SECURITIES" HAVE NOT BEEN APPROVED OR DISAPPROVED BY THE UNITED STATES SECURITIES AND EXCHANGE   COMMISSION ("SEC"),   THE   TEXAS   SECURITIES   BOARD,   OR   ANY   OTHER   RELEVANT GOVERNMENTAL AUTHORITY IN ANY   STATE OF THE UNITED STATES.   IN ADDITION, NEITHER THE SEC, NOR ANY OTHER GOVERNMENTAL AUTHORITY HAS PASSED UPON THE ACCURACY OR ADEQUACY OF THIS DISCLOSURE OR UPON THE MERITS OF THE PLAN.   ANY REPRESENTATIONS TO THE CONTRARY MAY BE A CRIMINAL OFFENSE.

2.03.   THE INFORMATION CONTAINED HEREIN HAS NOT BEEN SUBJECT TO A CERTIFIED AUDIT.   FOR THE FOREGOING REASON, AS WELL AS BECAUSE OF THE IMPOSSIBILITY OF MAKING ASSUMPTIONS, ESTIMATES AND PROJECTIONS INTO THE FUTURE WITH ACCURACY, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED   HEREIN IS COMPLETELY ACCURATE, ALTHOUGH EVERY REASONABLE EFFORT HAS BEEN   MADE TO ENSURE THAT SUCH INFORMATION IS ACCURATE.   THE APPROVAL BY THE COURT OF THIS DISCLOSURE DOES NOT CONSTITUTE AN ENDORSEMENT BY THE COURT

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

OF THE PLAN OR GUARANTEE THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN.

2.04. THE PROPONENT BELIEVES THAT THE PLAN WILL PROVIDE CLAIMANTS WITH AN OPPORTUNITY ULTIMATELY TO RECEIVE MORE THAN THEY WOULD RECEIVE (I) UNDER THE DEBTOR'S PROPOSED PLAN OR (II) IN A LIQUIDATION OF THE DEBTOR'S ASSETS, AND SHOULD BE ACCEPTED. CONSEQUENTLY, THE DEBTOR URGES THAT CLAIMANTS VOTE FOR THE PLAN.

2.05. PROPONENT DOES NOT WARRANT OR REPRESENT THAT THE INFORMATION CONTAINED HEREIN IS CORRECT, ALTHOUGH GREAT EFFORT HAS BEEN MADE TO BE ACCURATE.  THE STATEMENTS CONTAINED IN THIS DISCLOSURE ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN.

## ARTICLE III

## FINANCIAL PICTURE OF THE DEBTOR

### Financial History and Background of the Debtor

3.01.   According to the Debtor's proposed disclosure statement, D & D Hospitality LLC ("Debtor", "Debtor in Possession", or the "Company") was formed in September, 2006 for the purpose of acquiring and operating a Comfort Suites Hotel located in Gainesville, Texas ("Hotel"). The Debtor is and has been since April, 2007, the owner and operator of the Hotel and continues to operate its business as a Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Code. The Hotel being located in Gainesville, Texas is in proximity to the WinStar Casino.

The Debtor asserts that its financial difficulties arose soon after acquiring the business in 2007 when the Debtor encountered increased competition due to expansion of the casino, including construction of a 400 room hotel integrated with the casino facility, and the opening of several other hotels in the Gainesville area resulting in a drop in occupancy rates and revenue for the Hotel. Thereafter, commencing in 2008, the hospitality industry in the US and North Texas generally and the Hotel specifically experienced a material downturn in business due to the financial recession.  Dhillon, to the contrary, asserts that the Debtor's financial difficulties result from poor management and the Hotel's inability to match the performance of its peers in the relevant market.

As a result, the Company had to reduce, by agreement the monthly payments to the second lien holder and cease making payments to the third and fourth lien holders while continuing to meet its obligations to the first lien holder, the franchisor, taxing authorities and for the general operating expenses of the Hotel.

On August 16, 2011 North Texas Hotel Group Inc. ("North Texas"), which holds the fourth lien position on the Hotel, served on Debtor a notice of foreclosure. As a result, Debtor filed its Chapter 11 petition in the Northern District of Alabama (Case No. 11-83081-11) to prevent the foreclosure and to allow orderly reorganization of the Debtor under the protection of the

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

Bankruptcy Court. Thereafter, North Texas filed a motion to transfer venue to this Court, and, thereafter, by agreement of the Debtor and North Texas, the bankruptcy case was transferred in October, 2011 to this Court.

      1.      Revenue

The Debtor asserts that room revenue has been trending down since January 2009, and as of July 2009, took a large downward turn due to the drastic downturn in the economy and the shift in travel patterns of many companies compared to the past. Since mid 2011, the Hotel has evidenced a upturn in gross revenues which by November 30, 2011, reflected a healthy increase over year to date revenues earned in 2010.[1]

      2.      Future Activities.

The Debtor asserts that the key problems with the hotel are all directly related to the drastic downturn in the economy, and many companies looking for better rates and building of more rooms in the town. The Debtor asserts that the Debtor has started a very aggressive program to get new business and the businesses lost due to the economic downturn. The Debtor asserts that some companies are again bringing guests from out of town.

Dhillon believes that different management of the Hotel would improve revenues at the Hotel and make the Plan more feasible than the Debtor's proposed plan.

## Current Operations

3.02.    A Profit and Loss statement showing actual operation of the Debtor, according to information supplied by the Debtor for the 11 months ended November 30, 2011, is attached hereto as **Exhibit 2** and incorporated herein by this reference as if set forth in full for all purposes.

## Future Income and Expenses Under the Plan

3.03.    The Proponent's projections of plan payments is set forth on **Exhibit 3** attached hereto. The Debtor's proposed Claims Summary and Plan Payment Schedule is attached hereto as **Exhibit 4**. The funds to satisfy the obligations of the Plan will derive from the Debtor's continued business operations and the New Equity Interest Holders' contributions provided for by the Plan.

The Proponent believes that the Hotel is capable of performance better than that achieved to date by current management or as proposed under the Debtor's proposed Plan, and that the improved performance will make additional funds available for treatment of the Claims of Creditors under this Plan.

---

[1] The Debtor previously has asserted (Docket No. 97, at p. 12) that the Debtor's expenses under current management, as "benchmarked to the most recent hospitality industry trends report for Debtor's property specifications are well within the industry trends." The Debtor has not provided any comparative data to support such assertion.

---

**DISCLOSURE STATEMENT IN SUPPORT OF COMPETING PLAN**
**OF BAWA DHILLON, DATED: February 22, 2012 – Page 10 of 24**
0696489

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

**Future Management of the Debtor**

3.04.   Subject to and upon the occurrence of the Effective Date and as discussed more fully in Proponent's Plan, the Reorganized Debtor shall enter into a Management Agreement with DMC Hotels ("DMC") to manage the operations of the Hotel and an Operating Agreement pursuant to which Bawa Dhillon, a New Equity Interest holder, will assume the position of managing Member of the Reorganized Debtor.

3.05.   The Proponent shall not receive any compensation for acting as the managing member.

3.06.   The material terms of the management agreement between the Reorganized Debtor and DMC shall provide, *inter alia*, that

   a.   the Debtor shall pay DMC the sum of three thousand dollars ($3,000.00) per month plus an annual incentive fee equal to five per cent (5%) of the gross revenues generated by the Hotel in the years 2012 and thereafter in excess of the gross revenues generated by the Hotel in the year 2011; and

   b.   the incentive and management fees shall be earned but only paid if and when there are sufficient funds available after all operating expenses and Plan payments are made and there is a sufficient reserve for future contingencies.

The Proponent shall file in this case a proposed form of management agreement not later than ten (10) days prior to the voting deadline, and a copy of such agreement at such time may be obtained by contacting the undersigned counsel for the Proponent.  DMC's principal is Jagmohan Dhillon who has extensive experience in the hospitality industry in several market areas including the North Texas Market.

# ARTICLE IV
## ANALYSIS AND VALUATION OF PROPERTY

**Real Property**

4.01.   Debtor's non monetary assets consist of the Hotel and the personal property contained therein, including furniture, fixtures, and equipment.  Debtor estimates the as-is fair market value of the real property and all personal property at approximately $2,600,000.00.  The Debtor represents that the basis of the valuation is a recent appraisal.  Proponent does not possess a copy of the appraisal.  Furthermore, according to the Debtor's disclosure statement (Docket No. 108, at p. 13):

   The estimated value of the real property, including all personalty was arrived at from an appraisal which was done for the Debtor in the summer of 2011 which stated a value of $2,830,000.00, with adjustments by the Debtor.  More specifically

---

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

the appraisal assigned a total of $540,000.00 to the FF&E based on a per centage of the total valuation of the real property.[2]

## Cash on Hand

4.02.   Debtor represents that it has approximately $200,000.00, on hand and in its bank accounts as of the date of this Disclosure Statement.

## Liquidation Value of Assets

| Property | Value | Secured Debt | Equity |
|---|---|---|---|
| Real and Personal Property[3] | $2.6 million to $2.8 million | $4,737,714.00 | $0.00 |

Based upon the first lien debt and the value of the Property where is substantially less than the first lien debt, the Proponent asserts that it is academic that any Chapter 11 plan provides a greater return to creditors than a conversion of this case to Chapter 7.

## Funding of the Plan

The major source of funding for the Plan will come from the initial investment in the amount of $75,000 from Bawa Dhillon or his nominee, the Reorganized Debtor's business operations and going forward income, and cash on hand.  Concurrently, in the event that any additional sums are required to avoid default under the terms of this Chapter 11 Plan, all New Equity Interest members are committed to provide up to an additional $150,000.00 to be paid pro rata by the members based upon their individual equity interests.  If a New Equity Interest member does not contribute his pro rata share, the remaining members if any will be obligated to contribute the additional sums, and any defaulting member will lose his or its equity interest proportionate to the amount that the member failed to contribute.

## ARTICLE V
## SUMMARY OF THE PLAN AND
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

**Class 1** consists of any Allowed Administrative Claims (non-voting class).

**Class 2** consists of any Allowed Secured Tax Claims.

**Class 3** consists of any Allowed Priority Tax Claims (non-voting class).

---

[2] In spite of this appraisal, which would provide a secured claim for the SBA in Class 4(B), the Debtor's proposed plan indicates that the SBA is to be treated as wholly unsecured absent the SBA initiating a valuation contested matter.

[3] Included in the total value of the hotel.

---

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

**Class 4A** consists of the Allowed Secured Claim of US Bank NA.

**Class 4B** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of the North Texas CDC/SBA ("SBA").

**Class 4C** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of First-Citizens Bank & Trust Company.

**Class 4D** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of North Texas Hotel Group Ltd.

**Class 5** consists of any Allowed Unsecured Claims in excess of $15,000.00.

**Class 6** consists of any Allowed Unsecured Claims of $15,000.00 or less, and further includes the Allowed Unsecured Claims, which exceed $15,000.00 if such holder elects to reduce its aggregate Claim to $15,000.00.

**Class 7** consists of any prepetition or pre-Confirmation equity interests of any Interest Holder.

5.01.   The Claims and Interests classified in this Article V shall be treated in the manner set forth herein below.

**Class 1 Claims.**   The Class 1 Claims will be paid once Allowed, in full by the Reorganized Debtor on the latter of the Effective Date and the date such Claim is Allowed by Final Order. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtor's attorney's fees, U.S. Trustee's fees, and potentially (if this Plan is confirmed) the fees and expenses of the Proponent's attorneys.  U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following confirmation and until the case is closed.  The Class 1 Claims may agree to a different treatment.

**Class 2 Claims (Secured Tax Creditor Claims).**   The Class 2 Claims are secured claims with liens that will follow the collateral securing such claims to the extent that such collateral is surrendered either prior to or as part of this Plan such secured liens and claims shall follow the collateral and shall not be paid by the Reorganized Debtor as part of this Plan.  Debtor asserts that there are no Claims in this Class.  To the extent that such Claims are found to exist by a Final Order, such Claims shall be treated as follows:

The Class 2 Allowed Claims that relate to collateral or property being retained by the Debtor as part of the Plan shall be paid if Allowed over five (5) years from the Petition Date with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made to the extent of the tax escrow on hand and then monthly payments on the unpaid balance shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

These claims are secured claims.  These creditors shall retain their liens to secure their claims until paid in full under this Plan.  The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full.  These creditors shall retain their senior liens to secure their claims until paid in full under this Plan.  In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed.  While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed.

In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the Reorganized Debtor. Such default shall be cured within 15 business days of the date of transmission of such notice of default.  In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court.  The Claimant shall only be required to provide two notices of default.  Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 Claim.**  Debtor asserts that there are no Claims in this Class.[4]  To the extent that such Claims are found to exist by a Final Order, such Claims shall be treated as follows:

The Class 3 Claims will be paid if Allowed over three (3) years with interest on such amounts at the rate of 4.25% per annum until paid in full.  The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.  These claims are priority claims.  A failure by the Reorganized Debtor to make a payment to the priority tax creditors pursuant to the terms of the Plan shall be an Event of Default.  If the Reorganized Debtor fails to cure and Event of Default as to such payments within ten (10) days after receipt of written notice of default from the priority tax creditors, then the priority tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the priority tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

The occurrence of any of the following shall constitute an event of default under the Plan:

1)  **Failure to Make Payments.**  Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt.

---

[4] The IRS has filed a proof of claim (Claim No. 4) in the amount of $11,198.19 for third quarter 2011 unemployment taxes and what appears to be an unfiled payroll tax report.  To date, the Debtor has not filed an objection to this proof of claim, nor has the IRS withdrawn the proof of claim.  The Debtor's disclosure statement (Docket No. 108) at p. 17 contains a possibly erroneous reference to the "size and ongoing nature of the IRS's claim".

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

(a)    If the Reorganized Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the applicable Class 3 claimant may declare that the Debtor is in default of the Plan.  Failure to declare a default does not constitute a waiver by the applicable Class 3 claimant of the right to declare that the successor in interest or Debtor is in default.

(b)    If the applicable Class 3 claimant declares the Debtor or the successor in interest to be in default of the Reorganized Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Reorganized Debtor or the successor in interest.

(c)    If full payment is not made within 14 days of such demand, then the applicable Class 3 claimant may collect any unpaid liabilities through the administrative collection provisions if available under applicable law.

(d)    Any Class 3 claimant shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the applicable Class 3 Claimant.  Any applicable Class 3 claimant shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.[5]

**Class 4 Claim.**

**(a)    The Class 4A Claim will be paid as Allowed as follows:**

The Class 4A Claim will be treated as an Allowed Secured Claim of U.S. Bank NA in the amount of $2,576,496.11 and shall be paid in full with interest on such Allowed Amount at Wall Street Journal Prime Rate plus 1.6% per annum which interest rate shall be adjusted quarterly.  The Allowed Amount plus interest shall be amortized over twenty-five years from April 6, 2007 with a final payment due on April 6, 2032.  The payments shall be made in equal monthly installments of principal and interest commencing on the tenth day of the month following the Effective Date and shall continue on the tenth day of each month thereafter until paid in full.

U.S. Bank NA shall retain its liens against the Property until the satisfaction of such Allowed Secured Claim.  U.S. Bank NA otherwise shall not be entitled to (i) attorneys fees, (ii) collection costs asserted in connection with this Chapter 11 proceeding, nor (iii) any surcharges within the scope of 11 U.S.C. § 506(c).  The Claim in this Class may be prepaid at any time without increase or penalty.

The Class 4A Claimant is Impaired and the holder of the Class 4A Claim is entitled to vote to accept or reject the Plan.

---

[5] The Debtor's proposed disclosure statement indicates incorrectly that Class 3 is entitled to vote for or against a proposed plan.  *See* 11 U.S.C. § 1123.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

**(b)      The Class 4(B) Claim will be paid as Allowed as follows:**

The Class 4(B) Claim of the SBA claim shall be bifurcated into (i) an Allowed Secured Claim in the amount of $500,000, and (ii) an Allowed General Unsecured Claim in the amount of $1,091,923.20 (or the balance of the SBA's claim less the amount of the Class 4B Allowed Secured Claim) to be treated as a Class 5 General Unsecured Claim (*see* Class 5 below).

Unless otherwise agreed to in writing by this class and the Debtor, the holder of an Allowed Secured Claim in Class 4B shall be paid in equal monthly installments over a period of 25 years from the Effective Date with payments commencing on the last day of the first full calendar month following Effective Date.   The balance of the Class 4B Allowed Secured Claim shall accrue interest at the rate of four percent (4.0%) per annum.   The monthly payment under such treatment is estimated to be $ 2,639.18 per month.

The SBA shall retain its Lien against the Property to the extent of the SBA's Allowed Secured Claim until the satisfaction of such Allowed Secured Claim.

The SBA shall not be entitled to (i) attorneys fees, (ii) collection costs asserted in connection with this Chapter 11 proceeding, nor (iii) any surcharges within the scope of 11 U.S.C. § 506(c).  The Claim in this Class may be prepaid at any time without increase or penalty.

Class 4(B) is impaired and is entitled to vote to accept or reject the Plan.  The Unsecured balance of such Claim shall vote in Class 5 to the extent Allowed.

**(c)      The Class 4(C) Claim will be paid as Allowed as follows:**

Absent a determination that some portion of the Class 4C Claim of First-Citizens Bank & Trust Company is a Secured Claim pursuant to § 506 of the Bankruptcy Code, the entire amount of such Class 4C Claim will be treated as a Class 5 General Unsecured Claim.  If and to the extent the Bankruptcy Court determines at or before the conclusion of the Confirmation Hearing, at the request of the Class 4C Claimant, that any portion of the Class 4C claim is secured pursuant to § 506 of the Bankruptcy Code, then such secured portion only shall receive treatment as an Allowed Class 4C Secured Claim on repayment terms identical to the payment terms applicable to Class 4A. Otherwise, in the absence of any such determination or in the event of a determination that only a portion of such Claim is secured, the Class 4C Claim shall be treated as an Allowed Class 5 Unsecured Claim in the amount of $255,976.52 (or reduced dollar for dollar by any determination that any portion of such Claim is a Secured Claim).

The holder of any Class 4C Allowed Secured Claim is Impaired, and the holder is entitled to vote to accept or reject the Plan in Class 4C.  The Unsecured balance of such Claim shall vote in Class 5 to the extent Allowed.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

**(d)      The Class 4(D) Claim will be paid as Allowed as follows:**

Absent a determination that some portion of the Class 4D Claim of North Texas Hotel Group, Ltd. is a Secured Claim pursuant to § 506 of the Bankruptcy Code, the entire amount of such Class 4D Claim will be treated as a Class 5 General Unsecured Claim.  If and to the extent the Bankruptcy Court determines at or before the conclusion of the Confirmation Hearing, at the request of the Class 4D Claimant, that any portion of the Class 4D claim is secured pursuant to § 506 of the Bankruptcy Code, then such secured portion only shall receive treatment as an Allowed Class 4D Secured Claim on repayment terms identical to the payment terms applicable to Class 4A. Otherwise, in the absence of any such determination or in the event of a determination that only a portion of such Claim is secured, the Class 4D claim shall be treated as an Allowed Class 5 Unsecured Claim in the amount of $313,197.73 (or reduced dollar for dollar by any determination that any portion of such Claim is a Secured Claim). In such case, the holder of any Class 4D Allowed Secured Claim will be Impaired and entitled to vote to accept or reject the Plan in Class 4D, with the Unsecured balance of such Claim voting in Class 5 to the extent Allowed.

The Class 4(D) Claimant is Impaired, and the holder of the Class 4(D) Claim is entitled to vote to accept or reject the Plan.

**Class 5 Claim.** Class 5 consists of all Claimants holding an Allowed Unsecured Claim which is in excess of $15,000.00. Such Claims shall be paid as follows:

Each Claimant shall be paid ten percent (10.0%) of such Allowed Amount in 120 equal monthly installments with the first such payment due and payable on the 10th day of the first full calendar month following the Effective Date and continuing on the 10th day of each month thereafter until paid in full.

The Class 5 Claims are Impaired and each holder of a Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claim.**  The Class 6 Claim will be paid as Allowed as follows:

The Class 6 Claims consist of (x) Claimants holding Claims which, in the aggregate, equal the sum of $15,000.00 or less and (y) Claimants holding a claim or multiple claims totaling in excess of $15,000 and electing to reduce all such claims to a single claim of $15,000.  To the extent that such Class 6 Claims become Allowed Claims, such Claimants shall be paid the full amount of their Allowed Amount, but without any interest, on the Effective Date.

The Class 6 Claims are Impaired, and the holder of the Class 6 Claims are entitled to vote to accept or reject the Plan.

**Class 7 Claims.**  The Class 7 Claims will be treated as follows:

On the Effective Date, all existing equity interests in the Debtor ("Old Equity Interests") shall be cancelled.    Holders of Old Equity Interests not listed in Section 6.02 below are not invited to and shall not participate in the acquisition of New Equity Interests and accordingly shall

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

not be required on account of New Equity Interests to contribute new cash or capital to the Reorganized Debtor. However, holders of Old Equity Interests are not thereby relieved of any other obligations they may have under applicable Bankruptcy law or non-bankruptcy law either to the Debtor or its Creditors.

The Class 7 Claimants are totally impaired under the Plan and, pursuant to § 1126(g) of the Code, are deemed to have rejected the Plan and therefore are not entitled to vote to accept or reject the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

6.01.    **Implementation of Plan.**  This Plan will be implemented, pursuant to §1123(a) (5) of the Code, by the commencement of payments as called for above.

6.02.    **Issuance of New Equity Interests.**   The new equity interests ("New Equity Interests") in the Debtor shall be purchased and acquired by the following persons or entities on the Effective Date as follows.

| New Members | Cash Contribution Required at the Effective Date | Continuing Capital Contribution per the Plan up to $150,000.00 | Undiluted New Equity Membership Interest |
|---|---|---|---|
| Bawa Dhillon | $75,000.00 | $150,000.00 | 100% |
| Total | $75,000.00 | $150,000.00 | 100% |

The initial $75,000.00 capital contribution payments shall be tendered to and deposited into the Proponent's counsel's trust account prior to the Confirmation Date.  If the Plan is not confirmed, the $75,000.00 will be returned to those contributing entities.  The Debtor has filed a motion (Docket No. 104) to require that the deposits be made prior to the Confirmation Hearing.

If additional holders of New Equity Interests are proposed prior to confirmation, and if such a proposed holder of New Equity Interests does not contribute his or its pro rata share of the above initial or continuing capital cash contribution in the amount set forth above, such person or entity shall not become a holder of New Equity Interests or a member of the Reorganized Debtor but, instead, the remaining, resulting new members will be obligated to contribute the additional sums, and any defaulting member will lose his or its opportunity to acquire such New Equity Interests.

To the extent that a new member contributes any additional sums, then in that event the percentage of such remaining member's equity interest in the Reorganized Debtor shall be increased in an amount equal to the percentage that the additional sums contributed to the cash capital contributions is to the total cash contribution required of the New Equity Interests as set forth in this Section 6.02.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

None of the purchasing entities shall, by virtue of becoming a holder of the New Equity Interest on the Effective Date, be deemed to have assumed or otherwise become liable for any obligation of the Debtor or the Reorganized Debtor whether under the terms of this Plan or otherwise except for the initial contribution and subsequent capital requirements stated above except as may be expressly agreed to by them in writing from time to time, including, without limiting the foregoing, any state, local or federal tax claims arising before or as a result of implementation of the Plan on the Effective Date, but provided that any tax losses or gains attributable to the holders of the Old Equity Interests prior to or as a result of implementation of the Plan shall continue to be allocated to the holders of the Old Equity Interests notwithstanding the cancellation of those Interests as provided in the Plan.

From and after the Effective Date, the company agreement, articles, and bylaws, as applicable, of the Reorganized Debtor shall be amended (w) to comply with the Bankruptcy Code requirements, (x) to provide for the admission of the holders of New Equity Interests and for the exclusion from membership of holders of Old Equity Interests who do not qualify as holders of New Equity Interests, (y) to provide that no New Equity Interest may be held by, transferred to, or be the subject of any voluntary or involuntary transfer to any other person or entity, whether legally or beneficially, absent consent of all holders of New Equity Interests and, (z) to provide that, upon the death, incapacity, or incarceration of any permitted holder of New Equity Interest or upon such holder becoming the subject or object of a receivership proceeding, charging order, bankruptcy case, guardianship, or similar legal proceeding (with each of the foregoing constituting an "event of incapacity"), the voting rights associated with such holder's interests (together with any rights of such holder to serve as managing member) shall be suspended and the other permitted holders of New Equity Interests not the subject of such event of incapacity shall thereupon exercise one hundred percent (100%) of the voting rights of the ownership in the Reorganized Debtor and, if the holder subject to the event of incapacity is also managing member of the Reorganized Debtor, shall select a new managing member unless and until such holder of the New Equity Interest is relieved of his event of incapacity or such other holders consent to a transfer of such New Equity Interests to a new, permitted holder.  On the Effective Date, each holder of New Equity Interests shall additionally enter into an intra-owner buy/sell agreement providing for the foregoing and other typical buy/sell terms.

## ARTICLE VII
## FEASIBILITY OF PLAN

7.01    The Proponent asserts that this Plan is feasible based on Exhibits 2 and 3.  More specifically, as reflected in Exhibit 2, for 11 months ended November 30, 2011, the Hotel under its current (old) management has generated gross revenues year to date of $1,398,884.53 which after meeting operational costs has netted the Debtor of average monthly net revenues of $17,138.55.

The Proponent believes the Hotel is capable of generating increased additional revenue and that to date the Hotel has underperformed.  In addition to the capital contributions to be provided by the Proponent, the Debtor believes that the change of management proposed in this Plan will provide sufficient increased revenues to fully meet the obligations of the Plan.  *See* Exhibit 3.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

### Procedure for Filing Proofs of Claims and Proofs of Interests

7.02.   All proofs of claims and proofs of interests must be filed by those Claimants and Equity Interest Holder who have not filed such instruments on or before the Bar Date fixed by the Court.

7.03.   If Claimants have already filed a proof of claim with the Court or are listed in the Debtor's Schedules as holding non-contingent, liquidated, and undisputed claims, a proof of claim need not be filed. The schedules and amendments thereto are on file with the Court and are open for inspection during regular Court hours.   If the equity security interest of an Equity Interest Holder is properly reflected in the Debtor, a proof of interest need not be filed.

## ARTICLE VIII
## ALTERNATIVES TO DEBTOR'S PLAN

8.01.   If the Debtor's Plan is not confirmed, the Debtor's bankruptcy case may be converted to a case under Chapter 7 of the Code, in which case a trustee would be appointed to liquidate the assets of the Debtor for distribution to its Creditors in accordance with the priorities of the Code. Since the Debtor's assets are heavily mortgaged, Debtor projects that there would be little or no distribution to unsecured creditors in Chapter 7 (See discussion in Article IV, "Liquidation Value of Assets").

## ARTICLE IX
## RISKS TO CREDITORS UNDER THE DEBTOR'S PLAN

9.01.   Claimants should be aware that there are a number of substantial risks involved in consummation of the Plan.   The Plan contemplates that the Reorganized Debtor's business will generate revenue sufficient to pay the obligations accruing from its operations.   The Proponent does not "guarantee" that the expenses will equal those in the projections; however, the Proponent believes that the projections (Exhibit 3) are reasonable.

## ARTICLE X
## TAX CONSEQUENCES TO THE DEBTOR

TO ENSURE COMPLIANCE WITH U.S. TREASURY DEPARTMENT CIRCULAR 230, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT: (A) ANY DISCUSSION OF UNITED STATES FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, BY HOLDERS OF CLAIMS OR INTERESTS OR ANY OTHER PERSONS FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON HOLDERS OF CLAIMS OR ANY OTHER PERSONS UNDER THE INTERNAL REVENUE CODE; (B) SUCH DISCUSSION IS INCLUDED HEREIN IN CONNECTION WITH THE PROMOTION OR MARKETING     (WITHIN     THE MEANING     OF     U.S.     TREASURY DEPARTMENT CIRCULAR 230) OF THE TRANSACTIONS OR MATTERS ADDRESSED HEREIN; AND (C) HOLDERS OF CLAIMS AND INTERESTS SHOULD SEEK ADVICE

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

BASED ON THEIR PARTICULAR CIRCUMSTANCES FROM AN INDEPENDENT TAX ADVISER.

A.    Introduction

The following discussion summarizes certain material U.S. federal  income  tax consequences of the Plan to the Debtor and holders of Claims and Interests.  The summary is provided for general informational purposes only and is based on the United States Internal Revenue Code of 1986, as amended (the "Tax Code"), the treasury regulations promulgated thereunder, judicial authority and current administrative rulings and practice, all as in effect as of the date hereof (except as otherwise noted below with regard to the American Recovery and Reinvestment Act of 2009), and all of which are subject to change, possibly with retroactive effect. Changes in any of these authorities or in their interpretation could cause the United States federal income tax consequences of the Plan to differ materially from the consequences described below. The United States federal income tax consequences of the Plan are complex and in important respects uncertain. No ruling has been requested from the Internal Revenue Service (the "Service"); no opinion has been requested from Debtor's counsel concerning any tax consequence of the Plan; and no tax opinion is given by this Disclosure Statement.

The following discussion does not address all aspects of federal income taxation that may be relevant to a particular holder of a Claim or Interest in light of its particular facts and circumstances or to particular types of holders of Claims subject to special treatment under the Tax Code. For example, the discussion does not address issues of concern to broker-dealers or other dealers in securities, or foreign (non-U.S.) persons, nor does it address any aspects of state, local, or foreign (non-U.S.) taxation, or the taxation of holders of Interests in a Debtor. In addition, a substantial amount of time may elapse between the Confirmation Date and the receipt of a final distribution under the Plan. Events subsequent to the date of this Disclosure Statement, such as the enactment of additional tax legislation, court decisions or administrative changes, could affect the federal income tax consequences of the Plan and the transactions contemplated hereunder.

On February 13, 2009, the House of Representatives and the Senate passed H.R.1, the American Recovery and Reinvestment Act of 2009 (the Recovery Act), a stimulus bill that includes tax breaks for businesses and individuals. The President signed the Recovery Act on February 17, 2009.  The following discussion does not address any aspects of the Recovery Act, some of which may be relevant to a particular holder of a Claim or an Interest.

THE DISCUSSION THAT FOLLOWS IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING AND PROFESSIONAL TAX ADVICE BASED ON THE INDIVIDUAL CIRCUMSTANCES OF EACH HOLDER OF A CLAIM OR INTEREST.  EACH HOLDER OF A CLAIM OR INTEREST IS URGED TO CONSULT WITH ITS TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND NON-U.S.TAX CONSEQUENCES OF THE PLAN.

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

B.      Certain Definitions

Except as expressly otherwise provided or unless the context otherwise requires, all capitalized terms not otherwise defined herein or in the Plan shall have the respective meanings assigned to them in this Article.

"**COD**" shall mean cancellation of indebtedness income.

"**NOL**" shall mean net operating loss.

C.      Certain Material Federal Income Tax Consequences to the Debtor

Cancellation of a Debtor's debt is generally taxable income to the Debtor. COD is the amount by which the indebtedness of a Debtor discharged exceeds any consideration given in exchange therefore. Cancellation of a debt may not necessarily be COD, however. To the extent that the Debtor is insolvent, or if the Debtor is in bankruptcy, as is the case here, the Tax Code permits the Debtor to exclude the COD from its gross income. The statutory exclusion for COD in a title 11 case generally excludes COD from gross income if the discharge is granted by a court to a Debtor under its jurisdiction in a title 11 case, as is sought herein.

The price for the bankruptcy COD exclusion (as well as the insolvency exclusion) is reduction of the Debtor's tax attributes to the extent of the COD income, generally in the following order: NOLs for the year of the discharge and NOL carryovers from prior years; general business tax credit carryovers; minimum tax credit available as of the beginning of the year following the year of discharge; net capital loss for the year of discharge and capital loss carryovers from prior years; basis of the Debtor's assets; passive activity loss and credit carryovers from the year of discharge; and foreign tax credit carryovers to or from the year of discharge. The reduction of attributes does not occur until after the end of the Debtor's tax year in which the COD occurred, so they are available to the Debtor in determining the amount of its income, loss and tax liability for the year of discharge.

As a result of the implementation of the Plan, the Debtors will have COD and potential attribute reduction. Because any reduction in tax attributes does not effectively occur until the first day of the taxable year following the taxable year in which the COD is incurred, the resulting COD, on its own, should not impair the ability of the Debtor to use their tax attributes (to the extent otherwise available) to reduce their tax liability, if any, otherwise resulting from the implementation of the Plan.

Under section 382 of the Tax Code, if a corporation undergoes an "ownership shift," the amount of its Pre-Change Losses that may be utilized to offset future taxable income generally is subject to an annual limitation.  Although the Plan allows for an ownership change it is doubtful that one will occur and as such any owner of the Debtor should consult his own tax adviser concerning the effect of the Plan.

The United States federal income tax consequences of payment of Allowed Claims pursuant to the Plan will depend on, among other things, the consideration received, or deemed to

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

have been received, by the holder of the Allowed Claim, whether such holder reports income on the accrual or cash method, whether such holder receives distributions under the Plan in more than one taxable year, whether such holder's Claim is allowed or disputed at the Effective Date, whether such holder has taken a bad debt deduction or worthless security deduction with respect to its Claim.

In general, a holder of a Claim should recognize gain or loss equal to the amount realized under the Plan in respect of its Claim less the amount of such holder's basis in its Claim. Any gain or loss recognized in the exchange may be long-term or short-term capital gain or loss or ordinary income or loss, depending upon the nature of the Claim and the holder, the length of time the holder held the Claim and whether the Claim was acquired at a market discount. If the holder realizes a capital loss, its deduction of the loss may be subject to limitations under the Tax Code. The holder's aggregate tax basis for any property received under the Plan generally will equal the amount realized. The amount realized by a holder generally will equal the sum of the cash and the fair market value of any other property received (or deemed received) by the holder under the Plan on the Effective Date and/or any subsequent distribution date, less the amount (if any) allocable to Claims for interest.  All holders of Allowed Claims are urged to consult their tax advisors. A holder of a Claim constituting an installment obligation for tax purposes may be required to recognize currently any gain remaining with respect to the obligation if, pursuant to the Plan, the obligation is considered to be satisfied at other than its face value, distributed, transmitted, sold or otherwise disposed of within the meaning of Section 453B of the Tax Code.

D.      Importance of Obtaining Professional Tax Assistance

The foregoing discussion is intended only as a summary of certain U.S. federal income tax consequences of the Plan, and is not a substitute for careful tax planning with a tax professional. The above discussion is for general information purposes only and is not tax advice. The tax consequences are in many cases uncertain and may vary depending on a holder's individual circumstances.

HOLDERS OF CLAIMS ARE URGED TO CONSULT WITH THEIR TAX ADVISORS ABOUT THE FEDERAL, STATE, LOCAL AND NON-U.S.TAX CONSEQUENCES OF THE PLAN.

## ARTICLE X
## PENDING LITIGATION

10.01.  As of the date of the filing of this Disclosure the Debtor has disclosed no litigation other than the motion practice which has occurred to date in this case, and any litigation that may have been disclosed in the Statement of Financial Affairs.

## ARTICLE XI
## SUMMARY OF SIGNIFICANT ORDERS ENTERED DURING THE CASE

11.01. As of the date of the filing of this Disclosure the following significant orders have been entered in this case:      Order to Transfer Venue, Order to Use Cash Collateral, Order on

THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED BY THE COURT

Debtor's Application to Employ Counsel, and Order on Debtor's Application to Employ Accountant.

DATED:  February 22, 2012              Respectfully submitted by:

                                        WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

                                        By:   /s/ Jeff Carruth
                                        JEFF CARRUTH
                                        State Bar No. 24001846
                                        3030 Matlock Rd., Suite 201
                                        Arlington, Texas 76015
                                        Phone: (817) 795-5046
                                        Facsimile: (866) 666-5322
                                        jcarruth@wkpz.com

                                        ATTORNEYS FOR BAWA DHILLON

Jeff Carruth
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(817) 795-5046 – Telephone
(866) 666-5322 – Facsimile
jcarruth@wkpz.com

**ATTORNEYS FOR BAWA DHILLON**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | |
| **D & D HOSPITALITY, LLC,** | § | **CASE NO: 11-43153-BTR-11** |
| | § | |
| **Debtor in Possession** | § | **CHAPTER 11** |

**COMPETING PLAN OF REORGANIZATION OF BAWA DHILLON
DATED: February 22, 2012**

     Bawa Dhillon ("Dhillon" or the "Proponent"), proposes the following *Competing Plan of Reorganization of Bawa Dhillon, Dated February 22, 2012* ("Plan") dated February 22, 2012, pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtor. The Reorganized Debtor's profitability to fund its Plan is based primarily on the amount of revenues that it will earn from the continued operation of its business.

# ARTICLE I

## DEFINITIONS AND USE OF TERMS

**1.01     Defined Terms.**  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

**1.01.01          Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a) (1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor and Debtor's property under 28 U.S.C. Section 1930.

**1.01.02          Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.01.03          Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (I) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

**1.01.04          Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.05          Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

**1.01.06          Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division or such other court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**1.01.07          Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure.

**1.01.08          Bar Date** means subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.01.09          Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.01.10          Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.01.11**      __Claimant__ means any person or entity having or asserting a Claim in the case.

**1.01.12**      __Class__ or __Classes__ mean all of the holders of Claims or Interests that the Debtor has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.01.13**      __Confirmation__ means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.01.14**      __Confirmation Date__ means the date on which the Confirmation Order is entered.

**1.01.15**      __Confirmation Hearing__ means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

**1.01.16**      __Confirmation Order__ means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.01.17**      __Contested__ when used with respect to a Claim, means a Claim against the Debtor (a) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.01.18**      __Creditor__ shall have the meaning specified by Section 101(9) of the Code.

**1.01.19**      __Debtor__ means D & D Hospitality LLC, or, when the context requires in relationship to events occurring on and/or after the Effective Date, "Debtor" shall mean and refer to the "Reorganized Debtor."

**1.01.20**      __Disputed Claim__ means any Claim that is not an Allowed Claim.

**1.01.21**      __Effective Date__ means the later of (x) thirty days after the Confirmation Date and (y) the first business day on which the Confirmation Order is a Final Order.

**1.01.22**      __Estate__ means the estate created pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

**1.01.23**      __Fee Claim__ means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

**1.01.24**      __Filed__ means delivered to the Clerk of the Bankruptcy Court.

**1.01.25**        **Final Order** means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

**1.01.26**        **General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

**1.01.27**        **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (I) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (       C       ) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

**1.01.28**        **Manager** means the person(s) designated by the New Equity Interest Holder(s), consistent with the applicable entity governance documents and/or applicable law or order (including this Plan), who will manage the going forward operations and finances of the Reorganized Debtor on and after the Effective Date.

**1.01.29**        **New Equity Interests** means the membership interests in the Reorganized Debtor, a Texas limited liability company, from and after the Effective Date of the Plan, after giving effect to the Plan.

**1.01.30**        **Old Equity Interests** means the equity interest in the Debtor prior to the Effective Date.

**1.01.31**        **Petition Date** means September 2, 2011, the date the Debtor's voluntary petition was filed commencing this bankruptcy case.

**1.01.32**        **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

**1.01.33**        **Pre-petition** means prior to the Petition Date.

**1.01.34**        **Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a) (8).

**1.01.35**      **Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.01.36**      **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541.

**1.01.37**      **Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.01.38**      **Reorganized Debtor** means the Debtor from and after the Effective Date after giving effect to the Plan.

**1.01.39**      **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.40**      **Secured Tax Claim** means any Tax Claim which is secured by real or personal property.

**1.01.41**      **Secured Creditor** or **Secured Claimant** means any Claimant holding an Allowed Secured Claim.

**1.01.42**      **Unimpaired** means not Impaired.

**1.01.43**      **Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtor.

**1.01.44**      **Unsecured Claimants** or **Unsecured Creditors** means any holder of an allowed Unsecured Claim.

**1.01.45**      **Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.02**      **Number and Gender of Words.** Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.03**      **Terms Defined in the Bankruptcy Code.** Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.04**      **Headings.** The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05    Time Computation.** In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

## ARTICLE II
## CONCEPT OF THE PLAN

**2.01    Generally.**   The Plan is a plan of reorganization. The Reorganized Debtor shall continue its business after the Confirmation Date.  The Debtor's primary business has been and the Reorganized Debtor's business will continue to be the ownership and operation of a hotel doing business as Comfort Suites located at 1715 North Interstate 35, Gainesville, Texas 76240.  The Proponent's Plan proposes to pay the creditors pursuant to the Claim Summary and Plan Payment Schedule set forth in the exhibits.  It also contemplates the cancellation of Old Equity Interests in the Debtor and the issuance of New Equity Interests in the Reorganized Debtor as discussed more fully in this Plan.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01.    Treatment of Claims.**   This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02.    Time for Filing Claims.** The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Proponent's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.  Any such expenses not be paid prior to the Effective Date shall become a personal obligation of Debtor's pre-confirmation management.

**3.03.**   <u>**Modification to the Plan.**</u>   In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

**ARTICLE IV**
**<u>DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS</u>**

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.   The Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtor is otherwise released from such obligations by the Court.

**4.01.**   <u>**Class 1**</u> consists of any Allowed Administrative Claims (non-voting class).

**4.02.**   <u>**Class 2**</u> consists of any Allowed Secured Tax Claims.

**4.03.**   <u>**Class 3**</u> consists of any Allowed Priority Tax Claims (non-voting class).

**4.04.01.**      <u>**Class 4A**</u> consists of the Allowed Secured Claim of US Bank NA.

**4.04.02**      <u>**Class 4B**</u> consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of the North Texas CDC/SBA ("SBA").

**4.04.03**      <u>**Class 4C**</u> consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of First-Citizens Bank & Trust Company.

**4.04.04**      <u>**Class 4D**</u> consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of North Texas Hotel Group, Ltd

**4.05.**   <u>**Class 5**</u> consists of any Allowed Unsecured Claims in excess of $15,000.00.

**4.09.**   <u>**Class 6**</u> consists of any Allowed Unsecured Claims of $15,000.00 or less, and further includes the Allowed Unsecured Claims, which exceed $15,000.00 if such holder elects to reduce all of such holder's Claim to a single claim of $15,000.00.

**4.10.**   <u>**Class 7**</u> consists of any prepetition or pre-Confirmation equity interests of any Interest Holder.

# ARTICLE V
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

**Class 1 Claims.** The Class 1 Claims will be paid once Allowed, in full by the Reorganized Debtor on the latter of the Effective Date and the date such Claim is Allowed by Final Order. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtor's attorney's fees, U.S. Trustee's fees, and potentially (if this Plan is confirmed) the fees and expenses of the Proponent's attorneys. U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment.

**Class 2 Claims (Secured Tax Creditor Claims).** The Class 2 Claims are secured claims with liens that will follow the collateral securing such claims to the extent that such collateral is surrendered either prior to or as part of this Plan such secured liens and claims shall follow the collateral and shall not be paid by the Reorganized Debtor as part of this Plan. Debtor asserts that there are no Claims in this Class. To the extent that such Claims are found to exist by a Final Order, such Claims shall be treated as follows:

The Class 2 Allowed Claims that relate to collateral or property being retained by the Debtor as part of the Plan shall be paid if Allowed over five (5) years from the Petition Date with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made to the extent of the tax escrow on hand and then monthly payments on the unpaid balance shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

These claims are secured claims. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed.

In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the Reorganized Debtor. Such default shall be cured within 15 business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 Claim.** Debtor asserts that there are no Claims in this Class.[6] To the extent that such Claims are found to exist by a Final Order, such Claims shall be treated as follows:

The Class 3 Claims will be paid if Allowed over three (3) years with interest on such amounts at the rate of 4.25% per annum until paid in full. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. These claims are priority claims. A failure by the Reorganized Debtor to make a payment to the priority tax creditors pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure and Event of Default as to such payments within ten (10) days after receipt of written notice of default from the priority tax creditors, then the priority tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the priority tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt.

(a)    If the Reorganized Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the applicable Class 3 claimant may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the applicable Class 3 claimant of the right to declare that the successor in interest or Debtor is in default.

(b)    If the applicable Class 3 claimant declares the Debtor or the successor in interest to be in default of the Reorganized Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Reorganized Debtor or the successor in interest.

(c)    If full payment is not made within 14 days of such demand, then the applicable Class 3 claimant may collect any unpaid liabilities through the administrative collection provisions if available under applicable law.

---

[6] The IRS has filed a proof of claim (Claim No. 4) in the amount of $11,198.19 for third quarter 2011 unemployment taxes and what appears to be an unfiled payroll tax report. To date, the Debtor has not filed an objection to this proof of claim, nor has the IRS withdrawn the proof of claim. The Debtor's disclosure statement (Docket No. 108) at p. 17 contains a possibly erroneous reference to the "size and ongoing nature of the IRS's claim".

(d)      Any Class 3 claimant shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the applicable Class 3 Claimant.   Any applicable Class 3 claimant shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.[7]

**Class 4 Claim.**

**(a)      The Class 4A Claim will be paid as Allowed as follows:**

The Class 4A Claim will be treated as an Allowed Secured Claim of U.S. Bank NA in the amount of $2,576,496.11 and shall be paid in full with interest on such Allowed Amount at Wall Street Journal Prime Rate plus 1.6% per annum which interest rate shall be adjusted quarterly.  The Allowed Amount plus interest shall be amortized over twenty-five years from April 6, 2007 with a final payment due on April 6, 2032.  The payments shall be made in equal monthly installments of principal and interest commencing on the tenth day of the month following the Effective Date and shall continue on the tenth day of each month thereafter until paid in full.

U.S. Bank NA shall retain its liens against the Property until the satisfaction of such Allowed Secured Claim.   U.S. Bank NA otherwise shall not be entitled to (i) attorneys fees, (ii) collection costs asserted in connection with this Chapter 11 proceeding, nor (iii) any surcharges within the scope of 11 U.S.C. § 506(c).  The Claim in this Class may be prepaid at any time without increase or penalty.

The Class 4A Claimant is Impaired and the holder of the Class 4A Claim is entitled to vote to accept or reject the Plan.

**(b)      The Class 4(B) Claim will be paid as Allowed as follows:**

The Class 4(B) Claim of the SBA claim shall be bifurcated into (i) an Allowed Secured Claim in the amount of $500,000, and (ii) an Allowed General Unsecured Claim in the amount of $1,091,923.20 (or the balance of the SBA's claim less the amount of the Class 4B Allowed Secured Claim) to be treated as a Class 5 General Unsecured Claim (*see* Class 5 below).

Unless otherwise agreed to in writing by this class and the Debtor, the holder of an Allowed Secured Claim in Class 4B shall be paid in equal monthly installments over a period of 25 years from the Effective Date with payments commencing on the last day of the first full calendar month following Effective Date.  The balance of the Class 4B Allowed Secured Claim shall accrue interest at the rate of four percent (4.0%) per annum.  The monthly payment under such treatment is estimated to be $ 2,639.18 per month.

The SBA shall retain its Lien against the Property to the extent of the SBA's Allowed Secured Claim until the satisfaction of such Allowed Secured Claim.

---

[7] The Debtor's proposed plan indicates incorrectly that Class 3 is entitled to vote for or against a proposed plan.  *See* 11 U.S.C. § 1123.

The SBA shall not be entitled to (i) attorneys fees, (ii) collection costs asserted in connection with this Chapter 11 proceeding, nor (iii) any surcharges within the scope of 11 U.S.C. § 506(c).  The Claim in this Class may be prepaid at any time without increase or penalty.

Class 4(B) is impaired and is entitled to vote to accept or reject the Plan.  The Unsecured balance of such Claim shall vote in Class 5 to the extent Allowed.

**(c)      The Class 4(C) Claim will be paid as Allowed as follows:**

Absent a determination that some portion of the Class 4C Claim of First-Citizens Bank & Trust Company is a Secured Claim pursuant to § 506 of the Bankruptcy Code, the entire amount of such Class 4C Claim will be treated as a Class 5 General Unsecured Claim.  If and to the extent the Bankruptcy Court determines at or before the conclusion of the Confirmation Hearing, at the request of the Class 4C Claimant, that any portion of the Class 4C claim is secured pursuant to § 506 of the Bankruptcy Code, then such secured portion only shall receive treatment as an Allowed Class 4C Secured Claim on repayment terms identical to the payment terms applicable to Class 4A. Otherwise, in the absence of any such determination or in the event of a determination that only a portion of such Claim is secured, the Class 4C Claim shall be treated as an Allowed Class 5 Unsecured Claim in the amount of $255,976.52 (or reduced dollar for dollar by any determination that any portion of such Claim is a Secured Claim).

The holder of any Class 4C Allowed Secured Claim is Impaired, and the holder is entitled to vote to accept or reject the Plan in Class 4C.  The Unsecured balance of such Claim shall vote in Class 5 to the extent Allowed.

**(d)      The Class 4(D) Claim will be paid as Allowed as follows:**

Absent a determination that some portion of the Class 4D Claim of North Texas Hotel Group, Ltd. is a Secured Claim pursuant to § 506 of the Bankruptcy Code, the entire amount of such Class 4D Claim will be treated as a Class 5 General Unsecured Claim.  If and to the extent the Bankruptcy Court determines at or before the conclusion of the Confirmation Hearing, at the request of the Class 4D Claimant, that any portion of the Class 4D claim is secured pursuant to § 506 of the Bankruptcy Code, then such secured portion only shall receive treatment as an Allowed Class 4D Secured Claim on repayment terms identical to the payment terms applicable to Class 4A. Otherwise, in the absence of any such determination or in the event of a determination that only a portion of such Claim is secured, the Class 4D claim shall be treated as an Allowed Class 5 Unsecured Claim in the amount of $313,197.73 (or reduced dollar for dollar by any determination that any portion of such Claim is a Secured Claim). In such case, the holder of any Class 4D Allowed Secured Claim will be Impaired and entitled to vote to accept or reject the Plan in Class 4D, with the Unsecured balance of such Claim voting in Class 5 to the extent Allowed.

The Class 4(D) Claimant is Impaired, and the holder of the Class 4(D) Claim is entitled to vote to accept or reject the Plan.

**Class 5 Claim.** Class 5 consists of all Claimants holding an Allowed Unsecured Claim which is in excess of $15,000.00. Such Claims shall be paid as follows:

Each Claimant shall be paid ten percent (10.0%) of such Allowed Amount in 120 equal monthly installments with the first such payment due and payable on the 10th day of the first full calendar month following the Effective Date and continuing on the 10th day of each month thereafter until paid in full.

The Class 5 Claims are Impaired and each holder of a Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claim.** The Class 6 Claim will be paid as Allowed as follows:

The Class 6 Claims consist of (x) Claimants holding Claims which, in the aggregate, equal the sum of $15,000.00 or less and (y) Claimants holding a claim or multiple claims totaling in excess of $15,000 and electing to reduce all such claims to a single claim of $15,000. To the extent that such Class 6 Claims become Allowed Claims, such Claimants shall be paid the full amount of their Allowed Amount, but without any interest, on the Effective Date.

The Class 6 Claims are Impaired, and the holder of the Class 6 Claims are entitled to vote to accept or reject the Plan.

**Class 7 Claims.** The Class 7 Claims will be treated as follows:

On the Effective Date, all existing equity interests in the Debtor ("Old Equity Interests") shall be cancelled. Holders of Old Equity Interests not listed in Section 6.02 below are not invited to and shall not participate in the acquisition of New Equity Interests and accordingly shall not be required on account of New Equity Interests to contribute new cash or capital to the Reorganized Debtor. However, holders of Old Equity Interests are not thereby relieved of any other obligations they may have under applicable Bankruptcy law or non-bankruptcy law either to the Debtor or its Creditors.

The Class 7 Claimants are totally impaired under the Plan and, pursuant to § 1126(g) of the Code, are deemed to have rejected the Plan and therefore are not entitled to vote to accept or reject the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01    Implementation of Plan.** This Plan will be implemented, pursuant to §1123(a) (5) of the Code, by the commencement of payments as called for above.

**6.02    Issuance of New Equity Interests.** The new equity interests ("New Equity Interests") in the Debtor shall be purchased and acquired by the following persons or entities on the Effective Date as follows:

| New Members | Cash Contribution Required at the Effective Date | Continuing Capital Contribution per the Plan up to $150,000.00 | Undiluted New Equity Membership Interest |
|---|---|---|---|
| Bawa Dhillon | $75,000.00 | $150,000.00 | 100% |
| Total | $75,000.00 | $150,000.00 | 100% |

The initial $75,000.00 capital contribution payments shall be tendered to and deposited into the Proponent's counsel's trust account prior to the Confirmation Date. If the Plan is not confirmed, the $75,000.00 will be returned to those contributing entities. The Debtor has filed a motion (Docket No. 104) to require that the deposits be made prior to the Confirmation Hearing.

If additional holders of New Equity Interests are proposed prior to confirmation, and if such a proposed holder of New Equity Interests does not contribute his or its pro rata share of the above initial or continuing capital cash contribution in the amount set forth above, such person or entity shall not become a holder of New Equity Interests or a member of the Reorganized Debtor but, instead, the remaining, resulting new members will be obligated to contribute the additional sums, and any defaulting member will lose his or its opportunity to acquire such New Equity Interests.

To the extent that a new member contributes any additional sums, then in that event the percentage of such remaining member's equity interest in the Reorganized Debtor shall be increased in an amount equal to the percentage that the additional sums contributed to the cash capital contributions is to the total cash contribution required of the New Equity Interests as set forth in this Section 6.02.

None of the purchasing entities shall, by virtue of becoming a holder of the New Equity Interest on the Effective Date, be deemed to have assumed or otherwise become liable for any obligation of the Debtor or the Reorganized Debtor whether under the terms of this Plan or otherwise except for the initial contribution and subsequent capital requirements stated above except as may be expressly agreed to by them in writing from time to time, including, without limiting the foregoing, any state, local or federal tax claims arising before or as a result of implementation of the Plan on the Effective Date, but provided that any tax losses or gains attributable to the holders of the Old Equity Interests prior to or as a result of implementation of the Plan shall continue to be allocated to the holders of the Old Equity Interests notwithstanding the cancellation of those Interests as provided in the Plan.

From and after the Effective Date, the company agreement, articles, and bylaws, as applicable, of the Reorganized Debtor shall be amended (w) to comply with the Bankruptcy Code requirements, (x) to provide for the admission of the holders of New Equity Interests and for the exclusion from membership of holders of Old Equity Interests who do not qualify as holders of

New Equity Interests, (y) to provide that no New Equity Interest may be held by, transferred to, or be the subject of any voluntary or involuntary transfer to any other person or entity, whether legally or beneficially, absent consent of all holders of New Equity Interests and, (z) to provide that, upon the death, incapacity, or incarceration of any permitted holder of New

Equity Interest or upon such holder becoming the subject or object of a receivership proceeding, charging order, bankruptcy case, guardianship, or similar legal proceeding (with each of the foregoing constituting an "event of incapacity"), the voting rights associated with such holder's interests (together with any rights of such holder to serve as managing member) shall be suspended and the other permitted holders of New Equity Interests not the subject of such event of incapacity shall thereupon exercise one hundred percent (100%) of the voting rights of the ownership in the Reorganized Debtor and, if the holder subject to the event of incapacity is also managing member of the Reorganized Debtor, shall select a new managing member unless and until such holder of the New Equity Interest is relieved of his event of incapacity or such other holders consent to a transfer of such New Equity Interests to a new, permitted holder. On the Effective Date, each holder of New Equity Interests shall additionally enter into an intra-owner buy/sell agreement providing for the foregoing and other typical buy/sell terms.

**6.03    Continuation of Comfort Suites license.**    The New Equity Interest Holder and/or the Reorganized Debtor shall take whatever steps are required by Choice Hotels and/or Comfort Suites to maintain the existing license and "flag" of the Hotel.

## ARTICLE VII
## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 7.01.    Assumption or Rejection of Executory Contracts and Unexpired Leases.

(a)    Franchise Agreement. The Reorganized Debtor shall assume, pursuant to Bankruptcy Code Sections 1123(b)(2) and 365(a), the Franchise Agreement ("Agreement") between Debtor and Choice Hotels International, Inc. ("Choice") dated April 6, 2007 and, upon performance of the requirements of this paragraph, such Agreement shall be fully reinstated. As a condition of assumption and reinstatement of the Agreement, the Reorganized Debtor shall promptly cure all monetary and non-monetary defaults, or provide adequate assurance of such cure and shall continue to pay franchise fees as they become due in the ordinary course.

(b)    Other Executory Contracts and Unexpired Leases. Other executory contracts and unexpired leases shall be (x) assumed or rejected pursuant to one or more orders of the Bankruptcy Court entered prior to Confirmation of the Plan or in the Confirmation Order, (x) assumed or rejected pursuant to one or more orders of the Bankruptcy Court entered from and after entry of the Confirmation Order based on motions to assume or reject pending as of the Confirmation Date, or (z) in the unlikely event that any executory contract or unexpired lease has been overlooked and is not included in either the foregoing subparagraphs (b)(x) or (b)(y), assumed or rejected pursuant to one or more orders of the Bankruptcy Court entered from and after entry of the Confirmation Order based on motions to assume or reject filed within ninety (90) days following entry of the Confirmation Order.

**7.02.    Reservation of Rights.** The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any other executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and according to the terms of this Plan.

**7.03.   Bar Date for Claims Based on Rejection.**   If the rejection of an executory contract or an unexpired lease by the Debtor or Reorganized Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtor or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b) (6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

**ARTICLE VIII**
**PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT,**
**OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR**
**AND THE ESTATE INCLUDING PREFERENCES AND CONVEYANCES**

**8.01.   The Debtor's Causes of Action.**   Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Debtor for the benefit of the Creditors subsequent to the Effective Date.

Currently, Debtor is in the process of pursuing a claim with its casualty insurance carrier, AmTrust North America ("AmTrust") arising from damage incurred to the Hotel roof in 2011.  If a resolution satisfactory to Debtor cannot be reached with the carrier, Debtor and/or the Reorganized Debtor reserves the right to initiate litigation against AmTrust either in the Bankruptcy Court or in state court.

The Proponents also shall undertake an investigation of the Debtor's books and records to identify additional causes of action, including but not limited to any causes of action of the Debtor against the Debtor's current management.

On the Effective Date, the Reorganized Debtor shall be authorized and shall have the power to bring any and all such Causes of Action. All recoveries, if any, received from or in respect of the Causes of Action (whether by settlement, judgment or otherwise) shall become and be property of the Reorganized Debtor to be distributed in accordance with the Plan. To the extent permitted under law, all rights under § 363(h) of the Bankruptcy Code are also preserved for the benefit of Debtor's estate, and the Reorganized Debtor shall have the right to exercise those rights subject to Bankruptcy Court approval. The Reorganized Debtor may prosecute, settle or dismiss rights, claims, or causes of action as the Reorganized Debtor sees fit and all proceeds therefrom shall be

the property of the Reorganized Debtor, except as expressly released within this Plan.  Debtor, its management, attorneys, and other professional advisors shall have no liability to any entity or parties claiming through the Debtor for pursuing or not pursuing any such rights, claims, or causes of action vested in the Reorganized Debtor pursuant to the Plan.

Section 547 of the Bankruptcy Code allows a debtor to recover certain payments known as "voidable preferences." A "voidable preference" is a payment made within ninety (90) days prior to bankruptcy (or within one year of the bankruptcy for insiders) on an antecedent debt while the debtor is insolvent which allows a creditor to recover more than it would have if the payment had not been made and the debtor's assets were liquidated under Chapter 7. Certain payments are protected from recovery as preferences. These include payments made in the ordinary course of business and upon ordinary business terms, and payments representing a substantially contemporaneous exchange.  Debtor made the payments identified in its Statement of Financial Affairs to certain creditors during the ninety (90) days for non- insiders and 365 days for insiders prior to bankruptcy. After the Confirmation Date, the Reorganized Debtor, in its sole discretion, will make decisions regarding pursuit of litigation to pursue recovery of such payments under 11 U.S.C. § 547.

Provisions of the Bankruptcy Code allow a debtor to recover certain payments known as "fraudulent conveyances." A fraudulent conveyance is a transfer made within two (2) years of bankruptcy (or up to four years under state law) while the debtor was insolvent, which either was made with fraudulent intent or was made without receiving reasonably equivalent value.

After the Confirmation Date, the Reorganized Debtor will make decisions regarding pursuit of these transfers under 11 U.S.C. § 548 and other applicable law.

Also note that Section 549 of the Bankruptcy Code allows a debtor to recover post-petition transfers which were made without court approval.

The Proponent has attempted to disclose all material Causes of Action, including avoidance and other actions under Chapter 5 of the Bankruptcy Code, that it may hold against third parties. However, Proponent has not performed an exhaustive investigation or analysis of potential claims against third parties. Additionally, any and all of the herein described Causes of Action may have defenses, partial or total, to recovery by Debtor and/or the Reorganized Debtor.  Accordingly, the ultimate resolution of such claims may result in zero distributable assets being received by the Proponent, the Debtor, and/or the Reorganized Debtor.  It is the contemplation of the Plan that such investigation and analysis will occur post-confirmation by the Reorganized Debtor.  Debtor may hold other potential claims or causes of actions against third parties that the Debtor has not disclosed.  You should not rely on the omission of the disclosure of a claim to assume that Debtor holds no claim against any third party, including any creditor that may be reading this Disclosure Statement and/or casting a ballot.  Unless expressly released by the Plan, any and all such claims against third parties are specifically reserved and transferred to the Reorganized Debtor.  The Proponent's or the Debtor's failure to identify a claim herein is specifically not a waiver of any claim or cause of action.  Debtor will not ask the Court to rule or make findings with respect to the existence of any cause of action or the value of the entirety of Debtor's estate at the confirmation hearing; accordingly, except claims which are expressly released by the Plan, Debtor's failure to

identify a claim herein shall not give rise to any defense of judicial estoppel or res judicata with respect to claims which could be asserted against third parties, including creditors of Debtor which may be reading this Disclosure Statement and/or casting a ballot.  When casting your ballot, you should consider and take into account the possibility that Debtor may hold a claim against you that will be transferred to the Reorganized Debtor and, if the Reorganized Debtor deems advisable, fully pursued post-confirmation.

      **8.02.** <u>**Objections to Claims.**</u>  Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor and/or the Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

      No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor and/or the Reorganized Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at anytime, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

**ARTICLE IX**
**<u>EFFECT OF CONFIRMATION</u>**

      **9.01.** <u>**Discharge and Release of Debtor.**</u> The terms, covenants and consideration under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor, the Reorganized Debtor or the assets, including, without limitation, all Unsecured Claims or Secured Claims. Except as otherwise expressly provided herein, upon the Effective Date, both the Reorganized Debtor and its successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(A) of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of any kind specified in section 501(g), 502(h), or 502(l) of the Bankruptcy Code, whether or not: (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted this Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of discharge of all

liabilities of the Reorganized Debtor and his successors-in- interest and assigns other that those obligations specifically set forth pursuant to this Plan.

      **9.02.**  **Exculpated Entities.**  None of the officers, financial advisors, attorneys, or employees of the Proponent or Reorganized Debtor (collectively the "Exculpated Entities") shall have any liability for actions taken or omitted to be taken in good faith under or in connection with the Plan.

      **9.03.**  **Legal Binding Effect.**  The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

      **9.04**  **Permanent Injunction.**  Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor and any other entity against whom prosecution of the any Claims could result in a Claim being asserted against the Debtor that could arise directly or indirectly out of a claim against the Debtor.

      From and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor and/or the Reorganized Debtor; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor and/or the Reorganized Debtor; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor and/or the Reorganized Debtor; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor and/or the Reorganized Debtor; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however*, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Such restraint shall continue until the Debtor and/or the Reorganized Debtor has been granted a discharge by the Court or such creditor is paid in full as called for by the Plan. The setoff rights of the Texas Comptroller of Public Accounts are hereby preserved, and such rights shall therefore be unaffected by the Plan or confirmation thereof.

      Notwithstanding the foregoing, but expressly subject to the terms of this Plan, no holder of a contractual guarantee from any member, managing member, officer, or other holder of an Old Equity Interest shall be enjoined from enforcing such guarantee in accordance with its terms; provided, however: (x) remedies against any such guarantor with respect to such guarantor's interest in or ownership of any New Equity Interests acquired by virtue of this Plan shall be limited to those remedies provided under and through a charging order pursuant to Section 152.308, Texas Business Organizations Code, entitling the beneficiary of such charging order (*i.e.*, the holder of the guarantee against such guarantor) to receive any distributions made to such guarantor, as holder of New Equity Interests on account of such interests if, as, and when such distributions are declared and funded by the Reorganized Debtor, (y) neither the beneficiary of such charging order

nor any other person on account of such charging orders or other orders of the charging court shall be entitled to become a successor owner of or to vote such New Equity Interests without the consent of all other holders of New Equity Interests, and (z) the neither the beneficiary of such charging order nor any other persons on account of such charging order or other orders of the charging court shall be entitled to manage or operate or to limit the management or operations of the Reorganized Debtor without the consent of all other holders of New Equity Interests.

## ARTICLE X
## RETENTION OF JURISDICTION

**10.**    Jurisdiction of Bankruptcy Court. Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

**10.1**    To hear and determine motions, applications, adversary proceeding, and contested matters pending or commenced after the Effective Date;

**10.2**    To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

**10.3**    To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

**10.4**    To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

**10.5**    To construe and to take any action to enforce the Plan and the Confirmation Order;

**10.6**    To issue such orders as may be necessary for the implementation, execution and consummation of the Plan and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and the Confirmation Order;

**10.7**    To hear and determine any applications to modify the Plan, to cure any defect or omissions or to reconcile any inconsistency in the Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

**10.8**    To hear and determine all applications for Professional Claims;

**10.9**    To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover Assets that consist of Claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting Assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor, the Estate or the

Reorganized Debtor, including, without limitation, matters concerning federal, state, local and other taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; and to hear and determine any claim or cause of action held by the Bankruptcy Estate or the Reorganized Debtor;

**10.10**   To hear and determine other issues presented or arising under the Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with the Plan;

**10.11**   To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**10.12**   To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code; and

**10.13**   To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

### ARTICLE XI
### <u>MISCELLANEOUS PROVISIONS</u>

**11.01.   <u>Request for Relief Under Bankruptcy Code Section 1129.</u>** In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**11.02.   <u>Revocation.</u>** The Proponent reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**11.03.   <u>Effect of Withdrawal or Revocation.</u>** If the Proponent revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**11.04.   <u>Due Authorization by Creditors.</u>**   Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**11.05.   <u>Entire Agreement.</u>**   This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents and no Creditor is relying upon any representations

or promises made by or on behalf of the Debtor not otherwise expressly contained in this Plan and Debtor's Disclosure Statement.

**11.06.** **Section 1146 Exemption.**   Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**11.07.** **Provisions Governing Distributions.**   All payments and distributions under the Plan shall be made by the Reorganized Debtor as indicated. Any payments or distributions to be made by the Debtor pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by the Reorganized Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed).  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall remain the property of the Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Reorganized Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**11.08.** **Governing Law.**   Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

**EXHIBIT 1**

## ARTICLE XII
## MODIFICATION OF THE PLAN

**12.01**  The Proponent may propose amendments to or modifications of this Plan under Bankruptcy Code Section 1127 at any time prior to Confirmation upon notice to all parties affected thereby and providing such parties an opportunity to be heard on the proposed amendment. After Confirmation, the Reorganized Debtor may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Final Order in such manner as may be necessary to carry out the purpose and intent of this Plan so long as the interests of Claimants or Interest holders are not materially and adversely affected.

## ARTICLE XIII
## CONFIRMATION REQUEST

The Proponent hereby requests confirmation of this Plan pursuant to Section 1129(a) or 1129(b) of the Bankruptcy Code.

DATED:  February 22, 2012          Respectfully submitted by:


          /s/ Jagmohan Dhillon
Authorized Agent of Bawa Dhillon



WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

By:   /s/ Jeff Carruth
JEFF CARRUTH
State Bar No. 24001846
3030 Matlock Rd., Suite 201
Arlington, Texas 76015
Phone: (817) 795-5046
Facsimile: (866) 666-5322
jcarruth@wkpz.com

ATTORNEYS FOR BAWA DHILLON

## FROM DEBTOR (SEE DOCKET NO. 97):

### D D Hospitality, LLC DIP
### Profit Loss
### YTD 2011 & Projections

| | Jan-Nov 11 | Adjustment | Basis | TOTAL | Average | Proposed |
|---|---|---|---|---|---|---|
| **Ordinary Income/Expense** | | | | | | |
| **Income** | | | | | | |
| Room Revenue | 1,398,884.53 | -180,000.00 | Exceptional | 1,218,884.53 | 110,807.68 | 111,000.00 |
| **Total Income** | 1,398,884.53 | -180,000.00 | Feb, Nov. | 1,218,884.53 | 110,807.66 | 111,000.00 |
| | | | | | | |
| **Expense** | | | | | | |
| Advertising and Promotion | 12,772.55 | 3000 | Mkt mgr | 15,772.55 | 1,433.87 | 1500 |
| Bank Service Charges | 860.76 | | | 860.76 | 78.25 | 100 |
| Credit Card Fees | 31,951.56 | | | 31,951.56 | 2,904.69 | 3000 |
| Dues and Subscriptions | 1,710.00 | | | 1,710.00 | 155.45 | 200 |
| Professional Fees | 40,775.48 | -30000 | | 10,775.48 | 979.59 | 1000 |
| Franchise Fees | 96,854.24 | | | 96,854.24 | 8,804.93 | 9000 |
| Front desk & Office supplies/ Uniforms | 7,316.04 | | | 7,316.04 | 665.09 | 700 |
| Insurance Expense | 21,429.48 | | | 21,429.48 | 1,948.13 | 2000 |
| Officer/Employee travel Expense | 4,520.63 | | | 4,520.63 | 410.97 | 500 |
| Outside Service/ cable-phone | 34,517.41 | | | 34,517.41 | 3,137.95 | 3500 |
| Payroll and Tax | 275,949.40 | -15000 | | 260,949.40 | 23,722.67 | 24000 |
| Pest Control | 0.00 | | | 0.00 | 0.00 | 1000 |
| Pool and Landscape service | 14,390.48 | | | 14,390.48 | 1,308.23 | 1500 |
| Postage and Delivery | 0.00 | | | 0.00 | 0.00 | 500 |
| Repairs and Maintenance | 46,261.42 | | | 46,261.42 | 4,205.58 | 5000 |
| Supplies | 104,173.61 | | | 104,173.61 | 9,470.33 | 9000 |
| Occupancy Tax | 151,802.07 | -10000 | Rev. Redn. | 141,802.07 | 12,891.10 | 12500 |
| Property Tax | 118,573.23 | -58000 | Two yrs. | 60,573.23 | 5,506.66 | 6000 |
| U S Trustee fees | 0.00 | | | 0.00 | 0.00 | 0 |
| Utilities | 63,870.51 | 6000 | | 69,870.51 | 6,351.86 | 6500 |
| Vehicle Expense | 0.00 | | | 0.00 | 0.00 | 0 |
| **Total Expense** | 1,027,728.87 | -104,000.00 | | 923,728.87 | 83,975.35 | 87,500.00 |
| | | | | | | |
| Net Ordinary Income | 371,155.66 | -76,000.00 | | 295,155.66 | 26,832.33 | 23,500.00 |
| | | | | | | |
| Reserves | 0 | | | | 5000 | 5000 |

**EXHIBIT 3**

DRAFT — NO ADMISSION OF LIABILITY, SUBJECT TO REVISION

| D&D  5-year projections | 2012 | 2013 | 2014 | 2015 | 2016 |
|---|---|---|---|---|---|
| * For settlement purpose | Year 1 | Year 2 | Year 3 | Year 4 | Year 5 |
| | | | | | |
| Gross Room Revenue | $ 1,568,000.00 | $ 1,624,000.00 | $ 1,680,000.00 | $ 1,736,000.00 | $ 1,792,000.00 |
| Revenue - Other | 5,000.00 | 5,500.00 | 6,000.00 | 6,300.00 | 6,300.00 |
| **Total Gross Cash Receipts** | **1,573,000.00** | **1,629,500.00** | **1,686,000.00** | **1,742,300.00** | **1,798,300.00** |
| | | | | | |
| Salaries and Wages | 266,950.00 | 276,545.00 | 286,140.00 | 295,697.00 | 305,197.00 |
| Payroll Taxes | 28,100.00 | 29,110.00 | 30,120.00 | 31,126.00 | 32,126.00 |
| Employee Benefits | 1,500.00 | 1,700.00 | 1,800.00 | 1,900.00 | 2,000.00 |
| **Total Payroll Expense** | **296,550.00** | **307,355.00** | **318,060.00** | **328,723.00** | **339,323.00** |
| | | | | | |
| **Operational Expense** | | | | | |
| Comp Brkf Food/Supplies | 42,150.00 | 43,665.00 | 75,300.00 | 77,815.00 | 80,315.00 |
| Operating Supplies | 28,100.00 | 29,110.00 | 60,240.00 | 62,252.00 | 64,252.00 |
| Security | 5,620.00 | 5,822.00 | 30,120.00 | 31,126.00 | 32,126.00 |
| Office Supplies | 4,215.00 | 4,366.50 | 4,518.00 | 4,668.90 | 4,818.90 |
| Travel Agent Commission | 11,240.00 | 11,644.00 | 30,120.00 | 31,126.00 | 32,126.00 |
| Franchise Fees | 154,550.00 | 160,105.00 | 165,660.00 | 171,193.00 | 176,693.00 |
| Suit Shop Supplies | 1,405.00 | 1,455.50 | 1,506.00 | 1,556.30 | 1,606.30 |
| Dry Cleaning | 1,405.00 | 1,455.50 | 1,506.00 | 1,556.30 | 1,606.30 |
| Employee Training | 4,215.00 | 4,366.50 | 4,518.00 | 4,668.90 | 4,818.90 |
| Travel Expense | 1,405.00 | 1,455.50 | 1,506.00 | 1,556.30 | 1,606.30 |
| Postage & Freight | 2,107.50 | 2,183.25 | 2,259.00 | 2,334.45 | 2,409.45 |
| License and Tax | 1,405.00 | 1,455.50 | 1,506.00 | 1,556.30 | 1,606.30 |
| Professional & Legal Fees | 14,050.00 | 14,555.00 | 15,060.00 | 15,563.00 | 16,063.00 |
| Management Fee | 42,150.00 | 43,665.00 | 45,180.00 | 46,689.00 | 48,189.00 |
| Charitable Contributions | 500.00 | 500.00 | 500.00 | 500.00 | 500.00 |
| Dues and Subscriptions | 2,810.00 | 2,911.00 | 3,012.00 | 3,112.60 | 3,212.60 |
| Software Comm and Internet | 2,810.00 | 2,911.00 | 3,012.00 | 3,112.60 | 3,212.60 |
| Bank Charges | 562.00 | 582.20 | 602.40 | 622.52 | 642.52 |
| Credit Card Merchant Fees | 44,960.00 | 46,576.00 | 48,192.00 | 49,801.60 | 51,401.60 |
| Insurance | 28,100.00 | 29,110.00 | 30,120.00 | 31,126.00 | 32,126.00 |
| Pest Control | 1,124.00 | 1,164.40 | 1,204.80 | 1,245.04 | 1,285.04 |
| Repair & Maintenances | 14,050.00 | 14,555.00 | 15,060.00 | 15,563.00 | 16,063.00 |
| Utilities | 84,300.00 | 87,330.00 | 90,360.00 | 93,378.00 | 96,378.00 |
| Advertising and Promotion | 7,025.00 | 7,277.50 | 7,530.00 | 7,781.50 | 8,031.50 |
| **Admin & General** | **500,258.50** | **518,221.35** | **638,592.20** | **659,904.31** | **681,089.31** |
| | | | | | |
| Property Taxes | 65,000.00 | 65,000.00 | 65,000.00 | 65,000.00 | 65,000.00 |
| Occupancy Tax | 168,000.00 | 174,000.00 | 180,000.00 | 186,000.00 | 192,000.00 |
| **Total Tax Expense** | **233,000.00** | **239,000.00** | **245,000.00** | **251,000.00** | **257,000.00** |
| | | | | | |
| Mortgage Interest | 192,960.00 | 192,960.00 | 192,960.00 | 192,960.00 | 192,960.00 |
| Prepetition Payment Plan | 23,566.00 | 23,566.00 | 23,566.00 | 23,566.00 | 23,566.00 |
| Capital Reserved | 28,100.00 | 28,100.00 | 28,100.00 | 28,100.00 | 28,100.00 |
| **Interest & CapeEx** | **244,626.00** | **244,626.00** | **244,626.00** | **244,626.00** | **244,626.00** |
| | | | | | |
| **Total Job Cost** | **1,274,434.50** | **1,309,202.35** | **1,446,278.20** | **1,484,253.31** | **1,522,038.31** |
| | | | | | |
| **NOI** | **298,565.50** | **320,297.65** | **239,721.80** | **258,046.69** | **276,261.69** |

**Page 1 of 1**

**EXHIBIT 4**

**D&D Hospitality — Competing Plan of Bawa Dhillon**
**DRAFT -- NO ADDMISSION OF LIABILTY**
**Claims Summary and Plan Payment Schedule**

| Class | Claim Amount | | Plan Treatment for Class | Pay at Effective Date | Monthly Payment Amount |
|---|---|---|---|---|---|
| Class 1 - Administrative Claims | 30,000 | | | 30,000.00 | 0.00 |
| Class 2 - Ad Valorem Tax Claims | 0.00 | | Pay on or before Effective Date | | 0.00 |
| Class 3 - Priority Tax Claims | 0.00 | | Pay on or before Effective Date | 0.00 | 0.00 |
| Class 4A - US Bank | 2,576,486.11 | | 25 year am., Prime + 1.6% p.a. (est. 5% p.a.) | | 15,061.94 |
| Class 4B(i) - SBA - SECURED | 500,000.00 | | 25 year am., 4% p.a. | | 2,639.18 |
| Class 4B(ii) - SBA - UNSECURED | 1,000,000.00 | | 10% of claim over 5 years | | 1,666.67 |
| Class 4C - First Citizens Bank | 255,976.00 | | 10% of claim over 5 years | | 426.63 |
| Class 4D - North Texas H.G. | 313,197.73 | | 10% of claim over 5 years | | 522.00 |
| Class 5 - Unsecured >$15,000 | 200,000.00 | | 10% of claim over 5 years | | 333.33 |
| Executory contract | | | | | |
|     Choice Hotels Arrearage + Other Charges | 32,000.00 | | Pay at Confirmation | 32,000.00 | |
| Class 6 - Unsecured <$15,000 | 21,891.71 | | Pay at Confirmation | 21,891.71 | |
| | | | Total on/before Effective Date | 83,891.71 | |
| | | | Total Plan per Month | | 20,649.75 |
| | | | Total Plan per 12 Months | | 247,796.96 |

---

0696489