Jeff Carruth
**WEYCER, KAPLAN, PULASKI & ZUBER, P.C.**
3030 Matlock Rd., Suite 201
Arlington, TX 76015
(817) 795-5046 – Telephone
(866) 666-5322 – Facsimile
jcarruth@wkpz.com

**ATTORNEYS FOR BAWA DHILLON**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| D & D HOSPITALITY, LLC, | § | CASE NO: 11-43153-BTR-11 |
| | § | |
| Debtor in Possession | § | CHAPTER 11 |

## COMPETING PLAN OF REORGANIZATION OF BAWA DHILLON
## DATED: February 22, 2012

Bawa Dhillon ("Dhillon" or the "Proponent"), proposes the following *Competing Plan of Reorganization of Bawa Dhillon, Dated February 22, 2012* ("Plan") dated February 22, 2012, pursuant to Chapter 11 of the United States Bankruptcy Code on behalf of the Debtor. The Reorganized Debtor's profitability to fund its Plan is based primarily on the amount of revenues that it will earn from the continued operation of its business.

# ARTICLE I

# DEFINITIONS AND USE OF TERMS

**1.01    Defined Terms.**  Unless the context otherwise requires, capitalized terms shall have the meanings set forth in this section 1.01.

**1.01.01        Administrative Claim or Expense** means an administrative expense or Claim described in Section 503 of the Bankruptcy Code and entitled to administrative priority pursuant to Section 507(a) (1) of the Bankruptcy Code, including, but not limited to, Claims for compensation of professionals made pursuant to Sections 330 and 331 of the Bankruptcy Code, and all fees and charges assessed against the Debtor and Debtor's property under 28 U.S.C. Section 1930.

**1.01.02        Administrative Tax Claim** means an Unsecured Claim by any governmental unit for taxes (including interest or penalties related to such taxes) for any tax year or period, all or a portion of which occurs or falls within the period from and including the Petition Date through the Effective Date.

**1.01.03        Allowed Claim** means a Claim against the Debtor allowable under the Bankruptcy Code to the extent that (I) a proof of Claim, proof of Interest, or request for payment was timely Filed or, with leave of the Bankruptcy Court, late Filed, and as to which no objection has been timely Filed or, if Filed, is allowed by a Final Order, unless otherwise provided in this Plan or (ii) the Claim is scheduled and not listed as disputed, contingent, or unliquidated, and to which no objection has been timely Filed or, if Filed, is allowed by a Final Order.

**1.01.04        Allowed Secured Claim** means any Allowed Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.05        Bankruptcy Code or Code** means the United States Bankruptcy Code, Title 11 of the United States Code Section 101 et seq., as amended.

**1.01.06        Bankruptcy Court** means the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division or such other court that may have jurisdiction with respect to the reorganization of the Debtor pursuant to Chapter 11 of the Bankruptcy Code.

**1.01.07        Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure.

**1.01.08        Bar Date** means subsequent to which a proof of pre-petition Claim may not timely be Filed or the date by which proofs of claims held by governmental agencies must be filed.

**1.01.09        Case** means this Chapter 11 Bankruptcy Case in the Bankruptcy Court.

**1.01.10        Claim** shall have the meaning set forth in Bankruptcy Code Section 101(5).

**1.01.11**      **Claimant** means any person or entity having or asserting a Claim in the case.

**1.01.12**      **Class** or **Classes** mean all of the holders of Claims or Interests that the Debtor has designated pursuant to Section 1123(a)(1) of the Bankruptcy Code as having substantially similar characteristics as described in Article IV of this Plan.

**1.01.13**      **Confirmation** means the entry by the Bankruptcy Court of a Confirmation Order confirming this Plan.

**1.01.14**      **Confirmation Date** means the date on which the Confirmation Order is entered.

**1.01.15**      **Confirmation Hearing** means the hearing or hearings held before the Bankruptcy Court in which the Debtor will seek Confirmation of this Plan.

**1.01.16**      **Confirmation Order** means the Order of the Court confirming this Plan under Section 1129 of the Bankruptcy Code.

**1.01.17**      **Contested** when used with respect to a Claim, means a Claim against the Debtor (a) that is listed in the Debtor's Schedules of Assets and Liabilities as disputed, contingent, or unliquidated; (b) that is the subject of a pending action in a forum other than the Bankruptcy Court unless such Claim has been determined by Final Order in such other forum and Allowed by Final Order of the Bankruptcy Court; or (c) as to which an objection has been or may be timely filed and has not been denied by Final Order. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Contested Claim only to the extent of the objection.

**1.01.18**      **Creditor** shall have the meaning specified by Section 101(9) of the Code.

**1.01.19**      **Debtor** means D & D Hospitality LLC, or, when the context requires in relationship to events occurring on and/or after the Effective Date, "Debtor" shall mean and refer to the "Reorganized Debtor."

**1.01.20**      **Disputed Claim** means any Claim that is not an Allowed Claim.

**1.01.21**      **Effective Date** means the later of (x) thirty days after the Confirmation Date and (y) the first business day on which the Confirmation Order is a Final Order.

**1.01.22**      **Estate** means the estate created pursuant to Bankruptcy Code Section 541 with respect to the Debtor.

**1.01.23**      **Fee Claim** means a Claim under Bankruptcy Code Sections 330 or 503 for allowance of compensation and reimbursement of expenses to professionals in the Debtor's Chapter 11 case.

**1.01.24**      **Filed** means delivered to the Clerk of the Bankruptcy Court.

**1.01.25** **Final Order** means an Order as to which any appeal that has been taken has not been stayed following the expiration of the time for appeal or has been resolved, or as to which the time for appeal has expired.

**1.01.26** **General Unsecured Claim** means Unsecured Claim that is not entitled to priority under Section 507(a) of the Bankruptcy Code.

**1.01.27** **Impaired** means the treatment of an Allowed Claim pursuant to the Plan unless, with respect to such Claim, either (I) the Plan leaves unaltered the legal, equitable and contractual rights to which such Claim entitles the holder of such Claim, or (ii) notwithstanding any contractual provision or applicable law that entitles the holder of such Claim to demand or receive accelerated payment of such Claim after occurrence of a default, the Debtor (A) cures any default that occurred before or after the commencement of the Chapter 11 Case on the Petition Date, other than default of the kind specified in Section 365(b)(2) of the Bankruptcy Code; (B) reinstates the maturity of such Claim as such maturity existed before such default; (        C        ) compensates the holder of such Claim for any damages incurred as a result of any reasonable reliance by such holder on such contractual provision or such applicable law; and (D) does not otherwise alter the legal, equitable or contractual rights to which such Claim entitles the holder of such Claim; or (iii) the Plan provides that on the Effective Date, the holder of such Claim receives, on account of such Claim, cash equal to the Allowed Amount of such Claim.

**1.01.28** **Manager** means the person(s) designated by the New Equity Interest Holder(s), consistent with the applicable entity governance documents and/or applicable law or order (including this Plan), who will manage the going forward operations and finances of the Reorganized Debtor on and after the Effective Date.

**1.01.29** **New Equity Interests** means the membership interests in the Reorganized Debtor, a Texas limited liability company, from and after the Effective Date of the Plan, after giving effect to the Plan.

**1.01.30** **Old Equity Interests** means the equity interest in the Debtor prior to the Effective Date.

**1.01.31** **Petition Date** means September 2, 2011, the date the Debtor's voluntary petition was filed commencing this bankruptcy case.

**1.01.32** **Plan** means this Plan of Reorganization, as it may be amended or modified from time to time as permitted herein and by the Bankruptcy Court.

**1.01.33** **Pre-petition** means prior to the Petition Date.

**1.01.34** **Priority Tax Claim** means a Claim entitled to priority pursuant to Bankruptcy Code Section 507(a) (8).

**1.01.35**      **Pro Rata** means proportionately, based on the percentage that the amount of an Allowed Claim within a particular Class bears to the aggregate amount of all Allowed Claims in such Class.

**1.01.36**      **Property of the Estate** means all property in which the Debtor holds a legal or an equitable interest, including all property described in Bankruptcy Code Section 541.

**1.01.37**      **Rejection Claim** means any Claim arising pursuant to Bankruptcy Code Section 502(g) by reason of rejection by the Debtor of an executory contract or unexpired lease pursuant to Bankruptcy Code Sections 365 or 1123(b)(2).

**1.01.38**      **Reorganized Debtor** means the Debtor from and after the Effective Date after giving effect to the Plan.

**1.01.39**      **Secured Claim** means any Claim secured by a lien, security interest, or other charge or interest in property in which the Debtor has an interest, to the extent of the value thereof (determined in accordance with Bankruptcy Code Section 506(a)).

**1.01.40**      **Secured Tax Claim** means any Tax Claim which is secured by real or personal property.

**1.01.41**      **Secured Creditor** or **Secured Claimant** means any Claimant holding an Allowed Secured Claim.

**1.01.42**      **Unimpaired** means not Impaired.

**1.01.43**      **Unsecured Claim** means any Claim not collateralized (or the extent not fully collateralized) by assets of the Debtor.

**1.01.44**      **Unsecured Claimants** or **Unsecured Creditors** means any holder of an allowed Unsecured Claim.

**1.01.45**      **Voidable Transfer** means all transfers voidable under Sections 544, 545, 547, 548, 549 and/or 550 of the Code or any other state or federal transfer.

**1.02**      **Number and Gender of Words.** Whenever the singular number is used, it shall include the plural, and the plural shall include the singular, as appropriate to the context. Words of any gender shall include each other gender where appropriate.

**1.03**      **Terms Defined in the Bankruptcy Code.**   Capitalized terms not specifically defined in section 1.01 of the Plan shall have the definitions given those terms, if applicable, in the Bankruptcy Code.

**1.04**      **Headings.** The headings and captions used in this Plan are for convenience only and shall not be deemed to limit, amplify or modify the terms of this Plan nor affect the meaning thereof.

**1.05**   **Time Computation.** In computing any period of time prescribed herein, the provisions of Federal Rule of Bankruptcy Procedure Rule 9006(a) shall apply.

## ARTICLE II
## CONCEPT OF THE PLAN

**2.01**   **Generally.**   The Plan is a plan of reorganization. The Reorganized Debtor shall continue its business after the Confirmation Date.  The Debtor's primary business has been and the Reorganized Debtor's business will continue to be the ownership and operation of a hotel doing business as Comfort Suites located at 1715 North Interstate 35, Gainesville, Texas 76240.  The Proponent's Plan proposes to pay the creditors pursuant to the Claim Summary and Plan Payment Schedule set forth in the exhibits.  It also contemplates the cancellation of Old Equity Interests in the Debtor and the issuance of New Equity Interests in the Reorganized Debtor as discussed more fully in this Plan.

## ARTICLE III
## GENERAL TERMS AND CONDITIONS

**3.01.**   **Treatment of Claims.**   This Plan is intended to resolve all Claims against the Debtor and/or property of the Debtor of whatever character, whether contingent or liquidated, or whether allowed by the Bankruptcy Court pursuant to Bankruptcy Code Section 502(a). However, only Allowed Claims will receive treatment afforded by the Plan. The Plan is designed to insure that Claimants shall receive at least as much pursuant to this Plan as they would receive in a liquidation pursuant to Chapter 7 of the Bankruptcy Code.

**3.02.**   **Time for Filing Claims.** The holder of any Administrative Claim other than (i) a Fee Claim, (ii) a liability incurred and paid in the ordinary course of business by the Debtor, or (iii) an Allowed Administrative Claim, must file with the Bankruptcy Court and serve on the Debtor and its respective counsel, notice of such Administrative Claim within thirty (30) days after the Effective Date. At a minimum, such notice must identify (i) the name of the holder of such Claim, (ii) the amount of such Claim, and (iii) the basis of such Claim. Failure to file this notice timely and properly shall result in the Administrative Claim being forever barred and discharged.

Each Person asserting an Administrative Expense that is a Fee Claim incurred before the Effective Date shall be required to file with the Bankruptcy Court, and serve on the Proponent's counsel and the U. S. Trustee, a Fee Application within sixty (60) days after the Effective Date.

A person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

Liabilities incurred from the Petition Date through the Effective Date in the ordinary course of business shall be paid in the ordinary course of business by the Debtor.  Any such expenses not be paid prior to the Effective Date shall become a personal obligation of Debtor's pre-confirmation management.

**3.03.**  **Modification to the Plan.**  In accordance with Bankruptcy Rule 3019, to the extent applicable, this Plan may be modified or amended upon application of the Debtor, or corrected prior to the Confirmation Date, provided that notice and an opportunity for hearing have been given to any affected party. The Plan may be modified at any time after Confirmation and before the Effective Date, provided that the Plan, as modified, meets the requirements of sections 1122 and 1123 of the Bankruptcy Code and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as modified, under section 1129 of the Bankruptcy Code, the circumstances warrant such modification and Debtor consents thereto in writing.

## ARTICLE IV
## DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS

The Debtor designates the following Classes of Claims and Interests pursuant to Bankruptcy Code Section 1123.   The Debtor shall pay all fees assessed by the Office of the United States Trustee until this Case is closed by the Court or the Debtor is otherwise released from such obligations by the Court.

**4.01.**  **Class 1** consists of any Allowed Administrative Claims (non-voting class).

**4.02.**  **Class 2** consists of any Allowed Secured Tax Claims.

**4.03.**  **Class 3** consists of any Allowed Priority Tax Claims (non-voting class).

**4.04.01.**  **Class 4A** consists of the Allowed Secured Claim of US Bank NA.

**4.04.02**  **Class 4B** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of the North Texas CDC/SBA ("SBA").

**4.04.03**  **Class 4C** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of First-Citizens Bank & Trust Company.

**4.04.04**  **Class 4D** consists of any Allowed Secured Claim and any Allowed Unsecured deficiency Claim of North Texas Hotel Group, Ltd

**4.05.**  **Class 5** consists of any Allowed Unsecured Claims in excess of $15,000.00.

**4.09.**  **Class 6** consists of any Allowed Unsecured Claims of $15,000.00 or less, and further includes the Allowed Unsecured Claims, which exceed $15,000.00 if such holder elects to reduce all of such holder's Claim to a single claim of $15,000.00.

**4.10.**  **Class 7** consists of any prepetition or pre-Confirmation equity interests of any Interest Holder.

## ARTICLE V
## PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS

The Claims and Interests classified in Article IV hereof shall be treated in the manner set forth in this Article V.

**Class 1 Claims.** The Class 1 Claims will be paid once Allowed, in full by the Reorganized Debtor on the latter of the Effective Date and the date such Claim is Allowed by Final Order. These claims are priority claims pursuant to Section 507(a)(1) of the Bankruptcy Code. These claims include claims for Debtor's attorney's fees, U.S. Trustee's fees, and potentially (if this Plan is confirmed) the fees and expenses of the Proponent's attorneys. U.S. Trustee's fees must be paid until the case is closed. The Debtor must file quarterly reports following confirmation and until the case is closed. The Class 1 Claims may agree to a different treatment.

**Class 2 Claims (Secured Tax Creditor Claims).** The Class 2 Claims are secured claims with liens that will follow the collateral securing such claims to the extent that such collateral is surrendered either prior to or as part of this Plan such secured liens and claims shall follow the collateral and shall not be paid by the Reorganized Debtor as part of this Plan. Debtor asserts that there are no Claims in this Class. To the extent that such Claims are found to exist by a Final Order, such Claims shall be treated as follows:

The Class 2 Allowed Claims that relate to collateral or property being retained by the Debtor as part of the Plan shall be paid if Allowed over five (5) years from the Petition Date with interest on such amounts at the rate of 12% per annum until paid in full. The payments shall be made to the extent of the tax escrow on hand and then monthly payments on the unpaid balance shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full.

These claims are secured claims. These creditors shall retain their liens to secure their claims until paid in full under this Plan. The Class 2 Claims shall accrue interest from the Petition Date at the rate of 1% per month from the Petition Date through the Effective Date of the Plan and 12% per annum following the Effective Date until paid in full. These creditors shall retain their senior liens to secure their claims until paid in full under this Plan. In the event that the Debtor disputes such claim, the payments will be applied to the undisputed amount of the claim as ultimately allowed. While resolution of any such objection is pending, payments pursuant to the Plan shall be applied to the undisputed portion of the claim as ultimately allowed.

In the event of a default under the plan, counsel for holder of a claim in this class shall provide notice of the default via facsimile to counsel for the Reorganized Debtor. Such default shall be cured within 15 business days of the date of transmission of such notice of default. In the event the default is not cured, the Claimant shall be entitled to pursue all amounts owed pursuant to state law outside of the Bankruptcy Court. The Claimant shall only be required to provide two notices of default. Upon a third event of default, the Claimant shall be entitled to collect all amounts owed pursuant to state law outside of the Bankruptcy Court without further notice. Failure to pay post-petition taxes prior to delinquency shall constitute an event of default.

The Class 2 Claims are Impaired and the holders of the Class 2 Claims are entitled to vote to accept or reject the Plan.

**Class 3 Claim.** Debtor asserts that there are no Claims in this Class.[6] To the extent that such Claims are found to exist by a Final Order, such Claims shall be treated as follows:

The Class 3 Claims will be paid if Allowed over three (3) years with interest on such amounts at the rate of 4.25% per annum until paid in full. The payments shall be made in equal monthly payments on the first day of the month following the Effective Date and shall continue on the first day of each month thereafter until paid in full. These claims are priority claims. A failure by the Reorganized Debtor to make a payment to the priority tax creditors pursuant to the terms of the Plan shall be an Event of Default. If the Reorganized Debtor fails to cure and Event of Default as to such payments within ten (10) days after receipt of written notice of default from the priority tax creditors, then the priority tax creditors may (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies the priority tax creditors may have under applicable state law; and/or (c) seek such relief as may be appropriate in the Court.

The occurrence of any of the following shall constitute an event of default under the Plan:

1) **Failure to Make Payments.** Failure on the part of Debtor to pay fully when due any payment required to be made in respect of the Plan Debt.

(a)     If the Reorganized Debtor or its successor in interest fails to make any plan payment, or deposits of any currently accruing employment or sales tax liability within 10 days of the due date of such deposit or payment, or if the Debtor or its successor in interest failed to file any required federal or state tax return by the due date of such return, then the applicable Class 3 claimant may declare that the Debtor is in default of the Plan. Failure to declare a default does not constitute a waiver by the applicable Class 3 claimant of the right to declare that the successor in interest or Debtor is in default.

(b)     If the applicable Class 3 claimant declares the Debtor or the successor in interest to be in default of the Reorganized Debtor's obligations under the Plan, then the entire imposed liability, together with any unpaid current liabilities, may become due and payable immediately upon written demand to the Reorganized Debtor or the successor in interest.

(c)     If full payment is not made within 14 days of such demand, then the applicable Class 3 claimant may collect any unpaid liabilities through the administrative collection provisions if available under applicable law.

---

[6] The IRS has filed a proof of claim (Claim No. 4) in the amount of $11,198.19 for third quarter 2011 unemployment taxes and what appears to be an unfiled payroll tax report. To date, the Debtor has not filed an objection to this proof of claim, nor has the IRS withdrawn the proof of claim. The Debtor's disclosure statement (Docket No. 108) at p. 17 contains a possibly erroneous reference to the "size and ongoing nature of the IRS's claim".

(d)      Any Class 3 claimant shall not be bound by any release provisions in the Plan that would release any liability of the responsible persons of the Debtor to the applicable Class 3 Claimant.   Any applicable Class 3 claimant shall not take action to actually collect from such persons unless and until there is a default under the Plan and as set forth above.[7]

**Class 4 Claim.**

(a)      **The Class 4A Claim will be paid as Allowed as follows:**

The Class 4A Claim will be treated as an Allowed Secured Claim of U.S. Bank NA in the amount of $2,576,496.11 and shall be paid in full with interest on such Allowed Amount at Wall Street Journal Prime Rate plus 1.6% per annum which interest rate shall be adjusted quarterly.  The Allowed Amount plus interest shall be amortized over twenty-five years from April 6, 2007 with a final payment due on April 6, 2032.  The payments shall be made in equal monthly installments of principal and interest commencing on the tenth day of the month following the Effective Date and shall continue on the tenth day of each month thereafter until paid in full.

U.S. Bank NA shall retain its liens against the Property until the satisfaction of such Allowed Secured Claim.   U.S. Bank NA otherwise shall not be entitled to (i) attorneys fees, (ii) collection costs asserted in connection with this Chapter 11 proceeding, nor (iii) any surcharges within the scope of 11 U.S.C. § 506(c).  The Claim in this Class may be prepaid at any time without increase or penalty.

The Class 4A Claimant is Impaired and the holder of the Class 4A Claim is entitled to vote to accept or reject the Plan.

(b)      **The Class 4(B) Claim will be paid as Allowed as follows:**

The Class 4(B) Claim of the SBA claim shall be bifurcated into (i) an Allowed Secured Claim in the amount of $500,000, and (ii) an Allowed General Unsecured Claim in the amount of $1,091,923.20 (or the balance of the SBA's claim less the amount of the Class 4B Allowed Secured Claim) to be treated as a Class 5 General Unsecured Claim (*see* Class 5 below).

Unless otherwise agreed to in writing by this class and the Debtor, the holder of an Allowed Secured Claim in Class 4B shall be paid in equal monthly installments over a period of 25 years from the Effective Date with payments commencing on the last day of the first full calendar month following Effective Date.  The balance of the Class 4B Allowed Secured Claim shall accrue interest at the rate of four percent (4.0%) per annum.  The monthly payment under such treatment is estimated to be $ 2,639.18 per month.

The SBA shall retain its Lien against the Property to the extent of the SBA's Allowed Secured Claim until the satisfaction of such Allowed Secured Claim.

---

[7] The Debtor's proposed plan indicates incorrectly that Class 3 is entitled to vote for or against a proposed plan.  *See* 11 U.S.C. § 1123.

The SBA shall not be entitled to (i) attorneys fees, (ii) collection costs asserted in connection with this Chapter 11 proceeding, nor (iii) any surcharges within the scope of 11 U.S.C. § 506(c). The Claim in this Class may be prepaid at any time without increase or penalty.

Class 4(B) is impaired and is entitled to vote to accept or reject the Plan. The Unsecured balance of such Claim shall vote in Class 5 to the extent Allowed.

**(c)      The Class 4(C) Claim will be paid as Allowed as follows:**

Absent a determination that some portion of the Class 4C Claim of First-Citizens Bank & Trust Company is a Secured Claim pursuant to § 506 of the Bankruptcy Code, the entire amount of such Class 4C Claim will be treated as a Class 5 General Unsecured Claim. If and to the extent the Bankruptcy Court determines at or before the conclusion of the Confirmation Hearing, at the request of the Class 4C Claimant, that any portion of the Class 4C claim is secured pursuant to § 506 of the Bankruptcy Code, then such secured portion only shall receive treatment as an Allowed Class 4C Secured Claim on repayment terms identical to the payment terms applicable to Class 4A. Otherwise, in the absence of any such determination or in the event of a determination that only a portion of such Claim is secured, the Class 4C Claim shall be treated as an Allowed Class 5 Unsecured Claim in the amount of $255,976.52 (or reduced dollar for dollar by any determination that any portion of such Claim is a Secured Claim).

The holder of any Class 4C Allowed Secured Claim is Impaired, and the holder is entitled to vote to accept or reject the Plan in Class 4C. The Unsecured balance of such Claim shall vote in Class 5 to the extent Allowed.

**(d)      The Class 4(D) Claim will be paid as Allowed as follows:**

Absent a determination that some portion of the Class 4D Claim of North Texas Hotel Group, Ltd. is a Secured Claim pursuant to § 506 of the Bankruptcy Code, the entire amount of such Class 4D Claim will be treated as a Class 5 General Unsecured Claim. If and to the extent the Bankruptcy Court determines at or before the conclusion of the Confirmation Hearing, at the request of the Class 4D Claimant, that any portion of the Class 4D claim is secured pursuant to § 506 of the Bankruptcy Code, then such secured portion only shall receive treatment as an Allowed Class 4D Secured Claim on repayment terms identical to the payment terms applicable to Class 4A. Otherwise, in the absence of any such determination or in the event of a determination that only a portion of such Claim is secured, the Class 4D claim shall be treated as an Allowed Class 5 Unsecured Claim in the amount of $313,197.73 (or reduced dollar for dollar by any determination that any portion of such Claim is a Secured Claim). In such case, the holder of any Class 4D Allowed Secured Claim will be Impaired and entitled to vote to accept or reject the Plan in Class 4D, with the Unsecured balance of such Claim voting in Class 5 to the extent Allowed.

The Class 4(D) Claimant is Impaired, and the holder of the Class 4(D) Claim is entitled to vote to accept or reject the Plan.

**Class 5 Claim.** Class 5 consists of all Claimants holding an Allowed Unsecured Claim which is in excess of $15,000.00. Such Claims shall be paid as follows:

Each Claimant shall be paid ten percent (10.0%) of such Allowed Amount in 120 equal monthly installments with the first such payment due and payable on the 10th day of the first full calendar month following the Effective Date and continuing on the 10th day of each month thereafter until paid in full.

The Class 5 Claims are Impaired and each holder of a Class 5 Claim is entitled to vote to accept or reject the Plan.

**Class 6 Claim.** The Class 6 Claim will be paid as Allowed as follows:

The Class 6 Claims consist of (x) Claimants holding Claims which, in the aggregate, equal the sum of $15,000.00 or less and (y) Claimants holding a claim or multiple claims totaling in excess of $15,000 and electing to reduce all such claims to a single claim of $15,000. To the extent that such Class 6 Claims become Allowed Claims, such Claimants shall be paid the full amount of their Allowed Amount, but without any interest, on the Effective Date.

The Class 6 Claims are Impaired, and the holder of the Class 6 Claims are entitled to vote to accept or reject the Plan.

**Class 7 Claims.** The Class 7 Claims will be treated as follows:

On the Effective Date, all existing equity interests in the Debtor ("Old Equity Interests") shall be cancelled. Holders of Old Equity Interests not listed in Section 6.02 below are not invited to and shall not participate in the acquisition of New Equity Interests and accordingly shall not be required on account of New Equity Interests to contribute new cash or capital to the Reorganized Debtor. However, holders of Old Equity Interests are not thereby relieved of any other obligations they may have under applicable Bankruptcy law or non-bankruptcy law either to the Debtor or its Creditors.

The Class 7 Claimants are totally impaired under the Plan and, pursuant to § 1126(g) of the Code, are deemed to have rejected the Plan and therefore are not entitled to vote to accept or reject the Plan.

## ARTICLE VI
## MEANS FOR IMPLEMENTATION OF PLAN

**6.01    Implementation of Plan.** This Plan will be implemented, pursuant to §1123(a) (5) of the Code, by the commencement of payments as called for above.

**6.02    Issuance of New Equity Interests.** The new equity interests ("New Equity Interests") in the Debtor shall be purchased and acquired by the following persons or entities on the Effective Date as follows:

| New Members | Cash Contribution Required at the Effective Date | Continuing Capital Contribution per the Plan up to $150,000.00 | Undiluted New Equity Membership Interest |
|---|---|---|---|
| Bawa Dhillon | $75,000.00 | $150,000.00 | 100% |
| Total | $75,000.00 | $150,000.00 | 100% |

The initial $75,000.00 capital contribution payments shall be tendered to and deposited into the Proponent's counsel's trust account prior to the Confirmation Date.  If the Plan is not confirmed, the $75,000.00 will be returned to those contributing entities.  The Debtor has filed a motion (Docket No. 104) to require that the deposits be made prior to the Confirmation Hearing.

If additional holders of New Equity Interests are proposed prior to confirmation, and if such a proposed holder of New Equity Interests does not contribute his or its pro rata share of the above initial or continuing capital cash contribution in the amount set forth above, such person or entity shall not become a holder of New Equity Interests or a member of the Reorganized Debtor but, instead, the remaining, resulting new members will be obligated to contribute the additional sums, and any defaulting member will lose his or its opportunity to acquire such New Equity Interests.

To the extent that a new member contributes any additional sums, then in that event the percentage of such remaining member's equity interest in the Reorganized Debtor shall be increased in an amount equal to the percentage that the additional sums contributed to the cash capital contributions is to the total cash contribution required of the New Equity Interests as set forth in this Section 6.02.

None of the purchasing entities shall, by virtue of becoming a holder of the New Equity Interest on the Effective Date, be deemed to have assumed or otherwise become liable for any obligation of the Debtor or the Reorganized Debtor whether under the terms of this Plan or otherwise except for the initial contribution and subsequent capital requirements stated above except as may be expressly agreed to by them in writing from time to time, including, without limiting the foregoing, any state, local or federal tax claims arising before or as a result of implementation of the Plan on the Effective Date, but provided that any tax losses or gains attributable to the holders of the Old Equity Interests prior to or as a result of implementation of the Plan shall continue to be allocated to the holders of the Old Equity Interests notwithstanding the cancellation of those Interests as provided in the Plan.

From and after the Effective Date, the company agreement, articles, and bylaws, as applicable, of the Reorganized Debtor shall be amended (w) to comply with the Bankruptcy Code requirements, (x) to provide for the admission of the holders of New Equity Interests and for the exclusion from membership of holders of Old Equity Interests who do not qualify as holders of

New Equity Interests, (y) to provide that no New Equity Interest may be held by, transferred to, or be the subject of any voluntary or involuntary transfer to any other person or entity, whether legally or beneficially, absent consent of all holders of New Equity Interests and, (z) to provide that, upon the death, incapacity, or incarceration of any permitted holder of New

Equity Interest or upon such holder becoming the subject or object of a receivership proceeding, charging order, bankruptcy case, guardianship, or similar legal proceeding (with each of the foregoing constituting an "event of incapacity"), the voting rights associated with such holder's interests (together with any rights of such holder to serve as managing member) shall be suspended and the other permitted holders of New Equity Interests not the subject of such event of incapacity shall thereupon exercise one hundred percent (100%) of the voting rights of the ownership in the Reorganized Debtor and, if the holder subject to the event of incapacity is also managing member of the Reorganized Debtor, shall select a new managing member unless and until such holder of the New Equity Interest is relieved of his event of incapacity or such other holders consent to a transfer of such New Equity Interests to a new, permitted holder. On the Effective Date, each holder of New Equity Interests shall additionally enter into an intra-owner buy/sell agreement providing for the foregoing and other typical buy/sell terms.

      **6.03**   <u>**Continuation of Comfort Suites license.**</u>   The New Equity Interest Holder and/or the Reorganized Debtor shall take whatever steps are required by Choice Hotels and/or Comfort Suites to maintain the existing license and "flag" of the Hotel.

**ARTICLE VII**
**<u>TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES</u>**

      **7.01.**   <u>**Assumption or Rejection of Executory Contracts and Unexpired Leases.**</u>

      (a)    Franchise Agreement. The Reorganized Debtor shall assume, pursuant to Bankruptcy Code Sections 1123(b)(2) and 365(a), the Franchise Agreement ("Agreement") between Debtor and Choice Hotels International, Inc. ("Choice") dated April 6, 2007 and, upon performance of the requirements of this paragraph, such Agreement shall be fully reinstated. As a condition of assumption and reinstatement of the Agreement, the Reorganized Debtor shall promptly cure all monetary and non-monetary defaults, or provide adequate assurance of such cure and shall continue to pay franchise fees as they become due in the ordinary course.

      (b)    Other Executory Contracts and Unexpired Leases. Other executory contracts and unexpired leases shall be (x) assumed or rejected pursuant to one or more orders of the Bankruptcy Court entered prior to Confirmation of the Plan or in the Confirmation Order, (x) assumed or rejected pursuant to one or more orders of the Bankruptcy Court entered from and after entry of the Confirmation Order based on motions to assume or reject pending as of the Confirmation Date, or (z) in the unlikely event that any executory contract or unexpired lease has been overlooked and is not included in either the foregoing subparagraphs (b)(x) or (b)(y), assumed or rejected pursuant to one or more orders of the Bankruptcy Court entered from and after entry of the Confirmation Order based on motions to assume or reject filed within ninety (90) days following entry of the Confirmation Order.

      **7.02.**   <u>**Reservation of Rights.**</u> The Debtor shall have the right to assume or reject, pursuant to Bankruptcy Code Section 365, prior to the Confirmation Date, any other executory contract or unexpired lease of real property (to the extent permitted under the Bankruptcy Code) and according to the terms of this Plan.

**7.03.   Bar Date for Claims Based on Rejection.**   If the rejection of an executory contract or an unexpired lease by the Debtor or Reorganized Debtor results in damages to the other party or parties to such contract or lease, a Claim for such damages shall be forever barred and shall not be enforceable against the Reorganized Debtor or their properties or agents, successors, or assigns, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Reorganized Debtor, by the earlier of (a) the end of the month following the period in which the Effective Date occurs or (b) such other deadline as the Court may set for asserting a Claim for such damages. Any Rejection Claim arising from the rejection of an unexpired lease or executory contract shall be treated as a General Unsecured Claim; provided, however, that any Rejection Claim based upon the rejection of an unexpired lease of real property either prior to the Confirmation Date or upon the entry of the Confirmation Order shall be limited in accordance with section 502(b) (6) of the Bankruptcy Code and state law mitigation requirements. Nothing contained herein shall be deemed an admission by the Debtor that such rejection gives rise to or results in a Claim or shall be deemed a waiver by the Debtor of any objections to such Claim if asserted.

**ARTICLE VIII**
**PROVISIONS FOR THE RETENTION, ENFORCEMENT, SETTLEMENT,**
**OR ADJUSTMENT OF CLAIMS BELONGING TO THE DEBTOR**
**AND THE ESTATE INCLUDING PREFERENCES AND CONVEYANCES**

**8.01.   The Debtor's Causes of Action.**   Except as otherwise released pursuant to the Plan, all Claims recoverable under Section 550 of the Bankruptcy Code, all Claims against third parties on account of an indebtedness, and all other Claims of any kind or character whatsoever owed to or in favor of the Debtor or the Estate to the extent not specifically compromised and released pursuant to this Plan or any agreement referred to and incorporated herein, are hereby preserved and retained for enforcement by the Debtor for the benefit of the Creditors subsequent to the Effective Date.

Currently, Debtor is in the process of pursuing a claim with its casualty insurance carrier, AmTrust North America ("AmTrust") arising from damage incurred to the Hotel roof in 2011.  If a resolution satisfactory to Debtor cannot be reached with the carrier, Debtor and/or the Reorganized Debtor reserves the right to initiate litigation against AmTrust either in the Bankruptcy Court or in state court.

The Proponents also shall undertake an investigation of the Debtor's books and records to identify additional causes of action, including but not limited to any causes of action of the Debtor against the Debtor's current management.

On the Effective Date, the Reorganized Debtor shall be authorized and shall have the power to bring any and all such Causes of Action. All recoveries, if any, received from or in respect of the Causes of Action (whether by settlement, judgment or otherwise) shall become and be property of the Reorganized Debtor to be distributed in accordance with the Plan. To the extent permitted under law, all rights under § 363(h) of the Bankruptcy Code are also preserved for the benefit of Debtor's estate, and the Reorganized Debtor shall have the right to exercise those rights subject to Bankruptcy Court approval. The Reorganized Debtor may prosecute, settle or dismiss rights, claims, or causes of action as the Reorganized Debtor sees fit and all proceeds therefrom shall be

the property of the Reorganized Debtor, except as expressly released within this Plan.  Debtor, its management, attorneys, and other professional advisors shall have no liability to any entity or parties claiming through the Debtor for pursuing or not pursuing any such rights, claims, or causes of action vested in the Reorganized Debtor pursuant to the Plan.

Section 547 of the Bankruptcy Code allows a debtor to recover certain payments known as "voidable preferences." A "voidable preference" is a payment made within ninety (90) days prior to bankruptcy (or within one year of the bankruptcy for insiders) on an antecedent debt while the debtor is insolvent which allows a creditor to recover more than it would have if the payment had not been made and the debtor's assets were liquidated under Chapter 7. Certain payments are protected from recovery as preferences. These include payments made in the ordinary course of business and upon ordinary business terms, and payments representing a substantially contemporaneous exchange.  Debtor made the payments identified in its Statement of Financial Affairs to certain creditors during the ninety (90) days for non- insiders and 365 days for insiders prior to bankruptcy. After the Confirmation Date, the Reorganized Debtor, in its sole discretion, will make decisions regarding pursuit of litigation to pursue recovery of such payments under 11 U.S.C. § 547.

Provisions of the Bankruptcy Code allow a debtor to recover certain payments known as "fraudulent conveyances." A fraudulent conveyance is a transfer made within two (2) years of bankruptcy (or up to four years under state law) while the debtor was insolvent, which either was made with fraudulent intent or was made without receiving reasonably equivalent value.

After the Confirmation Date, the Reorganized Debtor will make decisions regarding pursuit of these transfers under 11 U.S.C. § 548 and other applicable law.

Also note that Section 549 of the Bankruptcy Code allows a debtor to recover post-petition transfers which were made without court approval.

The Proponent has attempted to disclose all material Causes of Action, including avoidance and other actions under Chapter 5 of the Bankruptcy Code, that it may hold against third parties. However, Proponent has not performed an exhaustive investigation or analysis of potential claims against third parties. Additionally, any and all of the herein described Causes of Action may have defenses, partial or total, to recovery by Debtor and/or the Reorganized Debtor.  Accordingly, the ultimate resolution of such claims may result in zero distributable assets being received by the Proponent, the Debtor, and/or the Reorganized Debtor.  It is the contemplation of the Plan that such investigation and analysis will occur post-confirmation by the Reorganized Debtor.  Debtor may hold other potential claims or causes of actions against third parties that the Debtor has not disclosed.  You should not rely on the omission of the disclosure of a claim to assume that Debtor holds no claim against any third party, including any creditor that may be reading this Disclosure Statement and/or casting a ballot.  Unless expressly released by the Plan, any and all such claims against third parties are specifically reserved and transferred to the Reorganized Debtor.  The Proponent's or the Debtor's failure to identify a claim herein is specifically not a waiver of any claim or cause of action.  Debtor will not ask the Court to rule or make findings with respect to the existence of any cause of action or the value of the entirety of Debtor's estate at the confirmation hearing; accordingly, except claims which are expressly released by the Plan, Debtor's failure to

identify a claim herein shall not give rise to any defense of judicial estoppel or res judicata with respect to claims which could be asserted against third parties, including creditors of Debtor which may be reading this Disclosure Statement and/or casting a ballot. When casting your ballot, you should consider and take into account the possibility that Debtor may hold a claim against you that will be transferred to the Reorganized Debtor and, if the Reorganized Debtor deems advisable, fully pursued post-confirmation.

     **8.02.** **Objections to Claims.** Any party authorized by the Bankruptcy Code may object to the allowance of Pre-petition Claims at any time prior to sixty (60) days after the Effective Date and, as to Rejection Claims, at any time prior to sixty (60) days after the filing of any such Rejection Claim. Any proof of Claim filed after the Court sets bar dates shall be of no force and effect and shall be deemed disallowed. All Contested Claims shall be litigated to Final Order; *provided, however,* that the Debtor and/or the Reorganized Debtor may compromise and settle any Contested Claim, subject to the approval of the Bankruptcy Court. Notwithstanding the foregoing, a person who is found to have received a voidable transfer shall have thirty (30) days following the date upon which the order ruling that such transfer is avoidable becomes a Final Order in which to file a Claim in the amount of such avoided transfer.

     No distributions under this Plan shall be made to the holder of a Claim that is in dispute, unless and until such Claim becomes an Allowed Claim. If a Claim is disputed in whole or in part because the Debtor and/or the Reorganized Debtor asserts a right of offset against such Claim or recoupment against the holder of such Claim, then, if and to the extent the Claim giving rise to the offset or recoupment is sustained by Final Order, the Claim in dispute shall be reduced or eliminated and, if applicable, the holder of such Claim shall be required to pay the amount of such offset or recoupment, less the amount of its Allowed Claim. In addition, any party authorized by the Bankruptcy Code, at anytime, may request that the Court estimate any contingent, disputed or unliquidated Claim pursuant to Section 502(c) of the Bankruptcy Code, regardless of any prior objections.

**ARTICLE IX**
**EFFECT OF CONFIRMATION**

     **9.01.** **Discharge and Release of Debtor.** The terms, covenants and consideration under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor, the Reorganized Debtor or the assets, including, without limitation, all Unsecured Claims or Secured Claims. Except as otherwise expressly provided herein, upon the Effective Date, both the Reorganized Debtor and its successors in interest and assigns shall be deemed discharged and released pursuant to section 1141(d)(A) of the Bankruptcy Code from any and all Claims, demands and liabilities that arose before the Effective Date, and all debts of any kind specified in section 501(g), 502(h), or 502(l) of the Bankruptcy Code, whether or not: (a) a proof of Claim based upon such debt is filed or deemed filed under section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is Allowed under section 502 of the Bankruptcy Code; (c) the holder of a Claim based upon such debt has accepted this Plan; or (d) the Claim has been Allowed, Disallowed, or estimated pursuant to section 502(c) of the Bankruptcy Code. The Confirmation Order shall be a judicial determination of discharge of all

liabilities of the Reorganized Debtor and his successors-in- interest and assigns other that those obligations specifically set forth pursuant to this Plan.

**9.02.   Exculpated Entities.**   None of the officers, financial advisors, attorneys, or employees of the Proponent or Reorganized Debtor (collectively the "Exculpated Entities") shall have any liability for actions taken or omitted to be taken in good faith under or in connection with the Plan.

**9.03.   Legal Binding Effect.**   The provisions of this Plan, pursuant to the Bankruptcy Code Section 1141 shall bind the Debtor and all Creditors, whether or not they accept this Plan. The distributions provided for Claimants shall not be subject to any Claim by another creditor or interest holder by reason of any assertion of a contractual right of subordination.

**9.04   Permanent Injunction.**   Confirmation of the Plan shall result in the issuance of a permanent injunction against the commencement or continuation of any judicial, administrative, or other action or proceeding on account of any Claims against the Debtor and any other entity against whom prosecution of the any Claims could result in a Claim being asserted against the Debtor that could arise directly or indirectly out of a claim against the Debtor.

From and after the Confirmation Date, all holders of Claims against the Debtor are restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor and/or the Reorganized Debtor; (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Assets or the Debtor and/or the Reorganized Debtor; (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Assets, or the Debtor and/or the Reorganized Debtor; (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor and/or the Reorganized Debtor; and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; *provided, however*, that each holder of a Contested Claim may continue to prosecute its proof of Claim in the Bankruptcy Court and all holders of Claims shall be entitled to enforce their rights under the Plan and any agreements executed or delivered pursuant to or in connection with the Plan. Such restraint shall continue until the Debtor and/or the Reorganized Debtor has been granted a discharge by the Court or such creditor is paid in full as called for by the Plan. The setoff rights of the Texas Comptroller of Public Accounts are hereby preserved, and such rights shall therefore be unaffected by the Plan or confirmation thereof.

Notwithstanding the foregoing, but expressly subject to the terms of this Plan, no holder of a contractual guarantee from any member, managing member, officer, or other holder of an Old Equity Interest shall be enjoined from enforcing such guarantee in accordance with its terms; provided, however: (x) remedies against any such guarantor with respect to such guarantor's interest in or ownership of any New Equity Interests acquired by virtue of this Plan shall be limited to those remedies provided under and through a charging order pursuant to Section 152.308, Texas Business Organizations Code, entitling the beneficiary of such charging order (*i.e.*, the holder of the guarantee against such guarantor) to receive any distributions made to such guarantor, as holder of New Equity Interests on account of such interests if, as, and when such distributions are declared and funded by the Reorganized Debtor, (y) neither the beneficiary of such charging order

nor any other person on account of such charging orders or other orders of the charging court shall be entitled to become a successor owner of or to vote such New Equity Interests without the consent of all other holders of New Equity Interests, and (z) the neither the beneficiary of such charging order nor any other persons on account of such charging order or other orders of the charging court shall be entitled to manage or operate or to limit the management or operations of the Reorganized Debtor without the consent of all other holders of New Equity Interests.

## ARTICLE X
## RETENTION OF JURISDICTION

**10.**     Jurisdiction of Bankruptcy Court. Following the Effective Date, and notwithstanding the entry of the Confirmation Order, the Bankruptcy Court shall retain jurisdiction of the Bankruptcy Case and all matters arising in, or related to, the Bankruptcy Case to the fullest extent permitted by law, including jurisdiction to:

**10.1**     To hear and determine motions, applications, adversary proceeding, and contested matters pending or commenced after the Effective Date;

**10.2**     To hear and determine objections (whether filed before or after the Effective Date) to, or requests for estimation of, any Claim, and to enter any order requiring the filing of proof of any Claim before a particular date;

**10.3**     To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

**10.4**     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified, or vacated;

**10.5**     To construe and to take any action to enforce the Plan and the Confirmation Order;

**10.6**     To issue such orders as may be necessary for the implementation, execution and consummation of the Plan and to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan and the Confirmation Order;

**10.7**     To hear and determine any applications to modify the Plan, to cure any defect or omissions or to reconcile any inconsistency in the Plan, the Disclosure Statement or in any order of the Bankruptcy Court including, without limitation, the Confirmation Order;

**10.8**     To hear and determine all applications for Professional Claims;

**10.9**     To hear and determine any action concerning the recovery and liquidation of assets, wherever located, including without limitation litigation to liquidate and recover Assets that consist of Claims, rights and causes of action against third parties and actions seeking declaratory relief with respect to issues relating to or affecting Assets; and to hear and determine any action concerning the determination of taxes, tax refunds, tax attributes, and tax benefits and similar or related matters with respect to the Debtor, the Estate or the

Reorganized Debtor, including, without limitation, matters concerning federal, state, local and other taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code; and to hear and determine any claim or cause of action held by the Bankruptcy Estate or the Reorganized Debtor;

**10.10** To hear and determine other issues presented or arising under the Plan, including disputes among holders of Claims and arising under agreements, documents or instruments executed in connection with the Plan;

**10.11** To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

**10.12** To hear and determine any other matters related hereto and not inconsistent with Chapter 11 of the Bankruptcy Code; and

**10.13** To enter a final decree closing the Case pursuant to Bankruptcy Rule 3022.

**ARTICLE XI**
**MISCELLANEOUS PROVISIONS**

**11.01.** **Request for Relief Under Bankruptcy Code Section 1129.** In the event any Impaired Class shall fail to accept this Plan in accordance with Bankruptcy Code Section 1129(a), the Proponent reserves the right to, and does hereby request the Bankruptcy Court to confirm the Plan in accordance with Bankruptcy Code Section 1129(b).

**11.02.** **Revocation.** The Proponent reserves the right to revoke and withdraw this Plan at any time prior to the Confirmation Date.

**11.03.** **Effect of Withdrawal or Revocation.** If the Proponent revokes or withdraws this Plan prior to the Confirmation Date, or if the Confirmation Date or the Effective Date does not occur, then this Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor or any other person or to prejudice in any manner the rights of the Debtor or any person in any further proceedings involving the Debtor.

**11.04.** **Due Authorization by Creditors.** Each and every Claimant who elects to participate in the distributions provided herein warrants that it is authorized to accept in consideration of its Claim against the Debtor the distributions provided in the Plan and that there are no outstanding commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights conveyed or obligations undertaken by it under this Plan.

**11.05.** **Entire Agreement.** This Plan, as described herein, the Confirmation Order, and all other documents and instruments to effectuate this Plan provided for herein, constitute the entire agreement and understanding among the parties hereto relating to the subject matter hereof and supersedes all prior discussions and documents and no Creditor is relying upon any representations

or promises made by or on behalf of the Debtor not otherwise expressly contained in this Plan and Debtor's Disclosure Statement.

**11.06.** __Section 1146 Exemption.__  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange or any security under this Plan or the making or delivery of any instrument or transfer pursuant to, in implementation of or as contemplated by this Plan or the transfer of any property pursuant to this Plan shall not be taxed under any federal, state or local law imposing a stamp, transfer or similar tax or fee.

**11.07.** __Provisions Governing Distributions.__  All payments and distributions under the Plan shall be made by the Reorganized Debtor as indicated. Any payments or distributions to be made by the Debtor pursuant to the Plan shall be made as soon as reasonably practicable after the Effective Date, except as otherwise provided for in the Plan, or as may be ordered by the Bankruptcy Court.  Any payment or distribution by the Reorganized Debtor pursuant to the Plan, to the extent delivered by the United States Mail, shall be deemed made when deposited into the United States Mail.

Payments of Cash to be made by the Reorganized Debtor pursuant to the Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank.

Distributions and deliveries to holders of Allowed Claims shall be made at the addresses set forth on the proofs of Claim or proofs of interest filed by such holders (or at the last known addresses of such holders if no proof of Claim or proof of interest is filed).  All Claims for undeliverable distributions shall be made on or before the second anniversary of the Effective Date.  After such date, all unclaimed property shall remain the property of the Debtor and the Claim of any other holder with respect to such unclaimed property shall be discharged and forever barred.

Checks issued by the Reorganized Debtor in respect of Allowed Claims shall be null and void if not cashed within ninety (90) days of the date of delivery thereof.  Requests for reissuance of any check shall be made directly to the Reorganized Debtor by the holder of the Allowed Claim to whom such check originally was issued. Any claim in respect of such a voided check within ninety (90) days after the date of delivery of such check. After such date, all Claims in respect of void checks shall be discharged and forever barred, and the amount of such checks shall become Unclaimed Property and returned to the Reorganized Debtor.

No interest shall be paid on any Claim unless, and only to the extent that, the Plan specifically provides otherwise.

**11.08.** __Governing Law.__  Unless a rule of law or procedure supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) is applicable, or a specific choice of law provision is provided, the internal laws of the State of Texas shall govern the construction and implementation of the Plan and any agreements, documents, and instruments executed in connection with the Plan, without regard to conflicts of law.

## ARTICLE XII
## MODIFICATION OF THE PLAN

**12.01**  The Proponent may propose amendments to or modifications of this Plan under Bankruptcy Code Section 1127 at any time prior to Confirmation upon notice to all parties affected thereby and providing such parties an opportunity to be heard on the proposed amendment. After Confirmation, the Reorganized Debtor may remedy any defects or omissions or reconcile any inconsistencies in this Plan or in the Final Order in such manner as may be necessary to carry out the purpose and intent of this Plan so long as the interests of Claimants or Interest holders are not materially and adversely affected.

## ARTICLE XIII
## CONFIRMATION REQUEST

The Proponent hereby requests confirmation of this Plan pursuant to Section 1129(a) or 1129(b) of the Bankruptcy Code.

DATED:  February 22, 2012                 Respectfully submitted by:

                                                          /s/ Jagmohan Dhillon
                                                          Authorized Agent of Bawa Dhillon


                                                          WEYCER, KAPLAN, PULASKI & ZUBER, P.C.

                                                          By:   /s/ Jeff Carruth
                                                          JEFF CARRUTH
                                                          State Bar No. 24001846
                                                          3030 Matlock Rd., Suite 201
                                                          Arlington, Texas 76015
                                                          Phone: (817) 795-5046
                                                          Facsimile: (866) 666-5322
                                                          jcarruth@wkpz.com

                                                          ATTORNEYS FOR BAWA DHILLON